PER CURIAM.
¶ 1 William Schmidt-Sharkey appeals a judgment convicting him of possession of a firearm by a felon and possession of tetrahydrocannabinols (THC) as a second and subsequent offense. Schmidt-Sharkey argues: (1) he was denied his constitutional right to a speedy trial; (2) the evidence was insufficient to convict him of the firearm possession count; (3) holding a second trial on the firearm possession count violated his right to be free from double jeopardy; and (4) his conviction on the THC count is a "nullity" because he was not properly charged and arraigned on that count. We reject Schmidt-Sharkey's first and second arguments on the merits, and we agree with the State that he has forfeited his third and fourth arguments. We therefore affirm.
BACKGROUND
¶ 2 Just after 10:30 p.m. on September 1, 2012, a motor vehicle owned and operated by Schmidt-Sharkey was stopped by law enforcement for operating without its headlights illuminated. During the traffic stop, one of the officers observed a black handgun protruding from underneath the front driver's seat. Schmidt-Sharkey was placed under arrest, and during a search incident to arrest a bag containing 4.75 grams of marijuana was found in his pocket. On September 5, 2012, a criminal complaint was filed charging Schmidt-Sharkey with a single count of being a felon in possession of a firearm. At a preliminary hearing on September 12, 2012, Schmidt-Sharkey was bound over for trial on that charge. The State then filed an Information charging the same count, and Schmidt-Sharkey entered a plea of not guilty.
¶ 3 Schmidt-Sharkey's trial was originally scheduled to take place on March 25, 2013. However, his trial was repeatedly delayed for various reasons, which we discuss in greater detail below. In the interim, the State filed an Amended Information on March 26, 2014, adding a charge of THC possession as a second and subsequent offense.
¶ 4 Schmidt-Sharkey was not arraigned on the THC possession charge. A jury trial nevertheless took place on both charges beginning on December 3, 2014. Just before 5:00 p.m. on December 5, after deliberating for approximately four hours, the jury informed the circuit court that it had reached a verdict on the THC possession count but had not reached a verdict on the firearm possession count. The court then proposed to accept the jury's verdict on the THC possession count and declare a mistrial on the firearm possession count. Schmidt-Sharkey did not object to that procedure. The jury found Schmidt-Sharkey guilty of possessing THC.
¶ 5 On February 3, 2015, Schmidt-Sharkey filed a motion to dismiss the firearm possession charge on the ground that he had been denied his constitutional right to a speedy trial. The circuit court denied that motion, and a second trial on the firearm possession count commenced on March 25, 2015. At the conclusion of the second trial, the jury found Schmidt-Sharkey guilty of that charge.
¶ 6 At the beginning of the sentencing hearing on May 19, 2015, the circuit court concluded Schmidt-Sharkey had forfeited any argument regarding the court's failure to arraign him on the THC possession count. The court imposed a sentence of twelve months in the House of Correction on the firearm possession count and a consecutive sentence of six months in the House of Correction on the THC possession count. The court then conducted a "nunc pro tunc" arraignment on the THC possession count, during which Schmidt-Sharkey stood silent. The court therefore entered a not guilty plea on his behalf. The following day, a judgment of conviction was entered on both the firearm possession and THC possession counts. Schmidt-Sharkey now appeals.
DISCUSSION
I. Speedy trial
¶ 7 Schmidt-Sharkey argues his convictions must be reversed because he was denied his constitutional right to a speedy trial. "Both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial." State v. Urdahl , 2005 WI App 191, ¶ 11, 286 Wis. 2d 476, 704 N.W.2d 324. Whether this right has been violated is a question of law that we review independently, although we accept any findings of fact made by the circuit court unless they are clearly erroneous. Id. , ¶ 10.
¶ 8 When assessing whether a speedy-trial violation has occurred, we apply a four-factor test established in Barker v. Wingo , 407 U.S. 514 (1972). See Urdahl , 286 Wis. 2d 476, ¶ 11. We consider: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted the right to a speedy trial; and (4) whether the delay prejudiced the defendant. Id. "[T]he right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case." Id. Here, considering the four Barker factors in light of the totality of the circumstances, we conclude there was no violation of Schmidt-Sharkey's right to a speedy trial.
¶ 9 The first Barker factor-the length of the delay-is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." Urdahl , 286 Wis. 2d 476, ¶ 12. A post-accusation delay is considered to be presumptively prejudicial when it "approach[es] one year." Id. It is only necessary to inquire into the other Barker factors when a delay is presumptively prejudicial. State v. Borhegyi , 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App. 1998). In this case, the State concedes that the delay of two years and three months between Schmidt-Sharkey's arrest on September 1, 2012, and the commencement of his first trial on December 3, 2014, was presumptively prejudicial. We therefore consider the remaining Barker factors.
¶ 10 The second Barker factor directs us to consider the reasons for the delay. See Urdahl , 286 Wis. 2d 476, ¶ 11. When doing so, we first "identify the reason for each particular portion of the delay," and we then "accord different treatment to each category of reasons." Id. , ¶ 26.
A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.
Id. (citations omitted).
¶ 11 In this case, we agree with the State the entirety of the delay between Schmidt-Sharkey's arrest and the commencement of his first trial was either neutral or was attributable to the defense. Almost six months elapsed between Schmidt-Sharkey's arrest on September 1, 2012, and his first scheduled final pretrial hearing on February 28, 2013. The State asserts-and Schmidt-Sharkey does not dispute-that this six-month delay was part of the normal trial process and therefore should not be charged against either side.
¶ 12 Prior to the February 28, 2013 final pretrial hearing, the case had been scheduled to go to trial on March 25, 2013. However, during the February 28 hearing, attorney Mark Pecora informed the circuit court that he had just been retained to represent Schmidt-Sharkey, that he had not yet reviewed all of the discovery materials, and that he had another trial scheduled for March 25. He therefore asked the court to reschedule Schmidt-Sharkey's trial. The court expressly asked Schmidt-Sharkey whether it would be acceptable to postpone his trial, and Schmidt-Sharkey responded in the affirmative. The trial was then rescheduled for July 31, 2013. The five-month delay between February 28 and July 31 was clearly attributable to the defense.
¶ 13 The case did not, however, proceed to trial on July 31. Instead, during a hearing on July 1, 2013, the circuit court rescheduled Schmidt-Sharkey's trial for September 25, 2013, for reasons that are not apparent in the record. Given the complete lack of evidence regarding which party was responsible for this delay, we conclude the nearly two-month delay between the scheduled trial on July 31 and the rescheduled trial September 25 should not be charged against either party.
¶ 14 Thereafter, the trial was again delayed during a motion hearing on August 27, 2013. During that hearing, attorney Robert D'Arruda informed the circuit court that Schmidt-Sharkey wanted to fire attorney Pecora and instead retain attorney D'Arruda. However, attorney D'Arruda stated he would not be able to try the case during the scheduled trial date on September 25.
¶ 15 The circuit court then addressed Schmidt-Sharkey personally, inquiring whether he wanted to retain attorney D'Arruda, even though doing so would require postponing his trial again. The court explained to Schmidt-Sharkey the ways in which postponing the trial could disadvantage him. Schmidt-Sharkey responded, "I understand, but I think I need a different counsel to help me." He then stated he was "okay with" postponing his trial. Although the State objected to any adjournment, the court nevertheless agreed to substitute attorney D'Arruda as Schmidt-Sharkey's counsel, and it rescheduled his trial for November 20, 2013. The court confirmed Schmidt-Sharkey understood that this delay would be attributable him and that he was "giving up any objection to the delay." On these facts, the nearly two-month delay between September 25 and November 20 should be charged against Schmidt-Sharkey.
¶ 16 Schmidt-Sharkey's trial was again delayed on November 4, 2013. During a final pretrial hearing on that date, the parties jointly asked the circuit court for another adjournment because the State's DNA analyst was unavailable for trial on November 20 and the defense was "waiting on some transcripts" that it needed for trial. When the court asked Schmidt-Sharkey whether it was acceptable to adjourn his trial again, he initially replied, "Not really because this case happened like a year ago." However, after an off-the-record discussion with attorney D'Arruda, Schmidt-Sharkey told the court he believed he could accept the additional delay. The court then granted the parties' request for an adjournment and rescheduled the trial for February 24, 2014. Because the parties jointly asked for this adjournment, and because Schmidt-Sharkey consented to it, we conclude the nearly three-month delay between November 20, 2013, and February 24, 2014, should not be charged against either party.
¶ 17 CCAP[1] reflects that, on November 15, 2013, Schmidt-Sharkey's trial was rescheduled for March 26, 2014, due to the unavailability of the State's "crime lab analyst." The relevant CCAP entry reflects that defense counsel consented to this adjournment. If a delay "is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted." Urdahl , 286 Wis. 2d 476, ¶ 26. Accordingly, the nearly two-month delay between February 24, 2014, and March 26, 2014, should not be charged against either party.
¶ 18 CCAP further reflects that, on March 26, 2014, the parties appeared for trial. However, attorney D'Arruda filed a substitution request regarding the presiding judge. That request was granted, and the trial was rescheduled for April 23, 2014. This nearly one-month delay is attributable to the defense.
¶ 19 On April 22, 2014, attorney D'Arruda informed the circuit court that his law license had been suspended and he would therefore not be able to appear at trial the following day. Attorney Joshua Uller was subsequently appointed to represent Schmidt-Sharkey, and the trial was rescheduled for August 25, 2014. This approximately fourth-month delay should not be charged against either party.
¶ 20 On August 15, 2014, Schmidt-Sharkey's trial was adjourned indefinitely after attorney Uller raised concerns about Schmidt-Sharkey's competency and requested a competency evaluation. The circuit court granted that request, noting Schmidt-Sharkey had not "made a demand for a speedy trial." Schmidt-Sharkey was subsequently found competent to stand trial, and his trial was rescheduled for December 3, 2014. As noted above, Schmidt-Sharkey's first trial did, in fact, commence on that date. We agree with the State that the delay of approximately three months and one week between August 25, 2014, and December 3, 2014, was either neutral or attributable to the defense. In any event, that delay should not be charged against the State.
¶ 21 As the above summary demonstrates, the entirety of the delay between Schmidt-Sharkey's arrest on September 1, 2012, and the commencement of his first trial on December 3, 2014, was either neutral or attributable to Schmidt-Sharkey. Thereafter, resolution of Schmidt-Sharkey's case was further delayed after the jury in his first trial failed to reach a verdict on the firearm possession count. However, the two-month delay between December 5, 2014-the day the circuit court declared a mistrial on the firearm possession count-and February 9, 2015-the day Schmidt-Sharkey was originally scheduled to be retried on that count-was part of the normal trial process and is therefore not attributable to either party.
¶ 22 Although the parties were prepared for trial on February 9, 2015, the matter had to be rescheduled to March 25, 2015, due to a conflict in the circuit court's calendar. The State concedes that the six-week delay between February 9 and March 25 should be charged against the State. See Urdahl , 286 Wis. 2d 476, ¶ 26 (stating "delays caused by the government's negligence or overcrowded courts" are weighed against the state, albeit less heavily than deliberate attempts to delay the trial in order to hamper the defense). This six-week period, however, is the only portion of the nearly thirty-one-month period between Schmidt-Sharkey's arrest and the commencement of his second trial that is solely attributable to the State. On these facts, we agree with the State that the reasons for the delay weigh against a conclusion that Schmidt-Sharkey's right to a speedy trial was violated.
¶ 23 The third Barker factor directs us to consider whether the defendant asserted his or her right to a speedy trial. See Urdahl , 286 Wis. 2d 476, ¶ 11. In this case, it is undisputed that Schmidt-Sharkey never filed a speedy trial demand. In addition, he consented at least three times to the circuit court postponing his trial. Moreover, Schmidt-Sharkey did not raise any issue regarding his right to a speedy trial until February 3, 2015-two months after his first trial. "Though a defendant's failure to demand a speedy trial will not constitute a waiver of the right, the defendant's complete failure or delay in demanding a speedy trial will be weighed against him." Hatcher v. State , 83 Wis. 2d 559, 568, 266 N.W.2d 320 (1978) (citation omitted). Here, Schmidt-Sharkey's failure to timely assert his right to a speedy trial weighs against his claim that he was deprived of that right.
¶ 24 Finally, the fourth Barker factor directs us to consider whether Schmidt-Sharkey was prejudiced by the delay in bringing him to trial. See Urdahl , 286 Wis. 2d 476, ¶ 11. When assessing this factor, we consider "the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." Id. , ¶ 34. None of these interests supports Schmidt-Sharkey's claim that he was denied the right to a speedy trial.
¶ 25 First, it is undisputed that Schmidt-Sharkey spent only eight days in custody during the entire time period between his arrest and his second trial. For the remainder of that time, Schmidt-Sharkey was free on cash bond. He therefore cannot show that the delay in resolving his case resulted in oppressive pretrial incarceration. See id.
¶ 26 Second, there is nothing in the record to show that Schmidt-Sharkey was anxious or concerned because of the delay. See id. He never demanded a speedy trial, and he consented to adjournments at least three times. Although Schmidt-Sharkey asserts it is "to be expected" that a defendant in his position "would endure anxiety and concern from the successive trial delays over some 30 plus months," he does not cite any evidence showing that he actually experienced such anxiety or concern. And, as the State observes, it is likely that any anxiety Schmidt-Sharkey did experience "was greatly reduced by the fact that he remained free."
¶ 27 Third, Schmidt-Sharkey does not claim that the delay in bringing him to trial in any way impaired his ability to mount a defense. See id. On these facts, the fourth Barker factor weighs heavily against a conclusion that the delay violated Schmidt-Sharkey's right to a speedy trial.
¶ 28 Ultimately, while the length of the delay in this case was presumptively prejudicial under the first Barker factor, the three remaining factors do not support Schmidt-Sharkey's argument that he was deprived of his constitutional right to a speedy trial. We therefore decline to reverse Schmidt-Sharkey's convictions on speedy trial grounds.
II. Sufficiency of the evidence regarding the firearm possession count
¶ 29 Schmidt-Sharkey next argues the evidence was insufficient to support his conviction on the firearm possession count. To prevail on this claim, Schmidt-Sharkey must show that "the evidence, viewed most favorably to the state and the conviction, is so insufficient in probative value and force that it can be said as a matter of law that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." See State v. Poellinger , 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it." Id. If more than one reasonable inference can be drawn from the evidence, we must accept the inference that supports the jury's verdict, unless the evidence on which that inference is based is incredible as a matter of law. Id. at 506-07. The jury "is the sole arbiter of the credibility of witnesses and alone is charged with the duty of weighing the evidence." State v. Below , 2011 WI App 64, ¶ 4, 333 Wis. 2d 690, 799 N.W.2d 95.
¶ 30 Applying this deferential standard of review in the instant case, it is clear the State presented sufficient evidence to support the jury's guilty verdict on the firearm possession count. In order to obtain a conviction on that count, the State had to prove beyond a reasonable doubt that Schmidt-Sharkey possessed a firearm after having been convicted of a felony. See WIS. STAT. § 941.29(1m)(a) (2015-16).[2] The parties stipulated at trial that Schmidt-Sharkey was a convicted felon at the time of his arrest on September 1, 2012. It was also undisputed at trial that the gun police recovered from Schmidt-Sharkey's vehicle qualified as a firearm. The only disputed issue was whether Schmidt-Sharkey "possessed" that firearm.
¶ 31 In order to prove that Schmidt-Sharkey possessed the firearm, the State had to show that he "knowingly had actual physical control of" it. See WIS JI- CRIMINAL 1343 (June 2016) (footnote omitted). A person possesses an item "if it is in an area over which the person has control and the person intends to exercise control over" it. Id. A person need not own an item in order to possess it; he or she need only "exercise control over" the item. Id. Moreover, possession of an item may be shared with another person, as long as the defendant exercises control over the item in question. Id.
¶ 32 Evidence was introduced at trial that, at about 10:35 p.m. on September 1, 2012, police stopped a motor vehicle driven by Schmidt-Sharkey for operating without its headlights illuminated. As the officers approached the vehicle, one of them saw Schmidt-Sharkey make furtive movements with his arm, as though he was trying to conceal something beneath his seat. After removing Schmidt-Sharkey and his passenger from the vehicle, one of the officers observed a pistol "partially concealed under the front driver's seat."
¶ 33 The pistol was swabbed for DNA. At trial, a forensic scientist from the Wisconsin State Crime Laboratory testified that the swabs from the pistol contained a mixture of DNA from at least two people. She explained that Schmidt-Sharkey was "included as a possible contributor to the modified major male component, and the probability of randomly selecting an unrelated individual that can be included as a contributor to the observed DNA mixture profile on that item, is approximately 1 in 1.5 trillion." Schmidt-Sharkey conceded at trial that the car he was driving at the time of the stop was registered to him and that he did not see his passenger with a gun that day.
¶ 34 Based on this evidence, the jury could reasonably conclude that Schmidt-Sharkey knowingly possessed a firearm. While Schmidt-Sharkey points to evidence that may have supported a different conclusion, his arguments in that regard ignore our standard of review. When assessing the sufficiency of the evidence, we must view the evidence in the light most favorable to the State and the conviction, and we may not reverse unless we can conclude, as a matter of law, that no rational trier of fact could have found guilt beyond a reasonable doubt. Poellinger , 153 Wis. 2d at 507. Here, the evidence summarized above would have allowed a rational jury to conclude that Schmidt-Sharkey possessed the firearm that police found underneath the driver's seat of his vehicle. Schmidt-Sharkey has not demonstrated that the jury "relied upon evidence that was inherently or patently incredible-that kind of evidence which conflicts with the laws of nature or with fully-established or conceded facts." See State v. Tarantino , 157 Wis. 2d 199, 218, 458 N.W.2d 582 (Ct. App. 1990). We therefore reject Schmidt-Sharkey's argument that insufficient evidence supports his conviction on the firearm possession count.
III. Double jeopardy
¶ 35 Schmidt-Sharkey next argues that the circuit court violated his right to be free from double jeopardy by holding a second trial on the firearm possession count. The Fifth Amendment to the United States Constitution and article I, section 8 of the Wisconsin Constitution protect a criminal defendant from being placed in jeopardy twice for the same offense. State v. Seefeldt , 2003 WI 47, ¶ 15, 261 Wis. 2d 383, 661 N.W.2d 822. Jeopardy "attaches in a jury trial when the selection of the jury has been completed and the jury is sworn." State v. Mattox , 2006 WI App 110, ¶ 12, 293 Wis. 2d 840, 718 N.W.2d 281. "Once jeopardy attaches, prosecution of a defendant before a jury other than the original jury, excluding any contemporaneously empanelled and sworn alternates, is barred unless: (1) there is a 'manifest necessity' for a mistrial; or (2) the defendant either requests or consents to a mistrial." Id. (citation omitted).
¶ 36 Schmidt-Sharkey's double jeopardy argument rests on the premise that the circuit court erred by declaring a mistrial on the firearm possession count because there was no "manifest necessity" for a mistrial and because he did not expressly consent to the same. However, we need not address the merits of this argument because we conclude Schmidt-Sharkey has forfeited his right to raise it on appeal. "It is a fundamental principle of appellate review that issues must be preserved at the circuit court. Issues that are not preserved at the circuit court, even alleged constitutional errors, generally will not be considered on appeal." State v. Huebner , 2000 WI 59, ¶ 10, 235 Wis. 2d 486, 611 N.W.2d 727. In order to preserve an issue for appeal, an objector "must articulate the specific grounds for the objection unless its basis is obvious from its context." State v. Agnello , 226 Wis. 2d 164, 172-73, 593 N.W.2d 427 (1999). The purpose of this rule is to give both the opposing party and the circuit court "notice of the disputed issues as well as a fair opportunity to prepare and address them in a way that most efficiently uses judicial resources." Id. at 173.
¶ 37 Here, Schmidt-Sharkey had multiple opportunities to raise his double jeopardy argument in the circuit court, but each time he failed to do so. For instance, after the circuit court proposed to declare a mistrial, but before it actually did so, the court asked the attorneys for both sides whether there was "anything [they wanted] to say at this point." The court then specifically asked defense counsel, "Attorney Uller, anything you want to say?" Attorney Uller responded, "Not at this time." This exchange shows that attorney Uller had the opportunity to challenge the court's declaration of a mistrial before it happened, but he declined to do so.
¶ 38 Attorney Uller also had an opportunity to object on double jeopardy grounds during a status conference on December 17, 2014, the purpose of which was to schedule the retrial of the firearm possession count. However, attorney Uller did not raise any double jeopardy concerns during that hearing. Instead, he simply informed the court that the parties were "asking for another trial date."
¶ 39 Attorney Uller could also have objected on double jeopardy grounds at any point before the March 25, 2015 retrial. In the months leading up to the retrial, attorney Uller filed two motions to dismiss based, respectively, on the alleged violation of Schmidt-Sharkey's right to a speedy trial and the State's alleged failure to disclose exculpatory evidence. He did not, however, file any motion to dismiss on double jeopardy grounds or raise any argument that holding a second trial on the firearm possession count would violate Schmidt-Sharkey's right to be free from double jeopardy.[3]
¶ 40 On these facts, we agree with the State that Schmidt-Sharkey has forfeited his right to raise his double jeopardy argument on appeal. Moreover, Schmidt-Sharkey did not file a reply brief, and he has therefore conceded the State's forfeiture argument. See Charolais Breeding Ranches, Ltd. v. FPC Sec. Corp. , 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (unrefuted arguments are deemed conceded). We therefore decline to address the merits of Schmidt-Sharkey's double jeopardy claim.[4]
IV. Failure to properly charge and arraign Schmidt-Sharkey on the THC possession count
¶ 41 Finally, Schmidt-Sharkey argues his conviction on the THC possession count is a "nullity" because: (1) the Amended Information charging that count was improperly filed after Schmidt-Sharkey's arraignment without leave of the court, see WIS. STAT. § 971.29(1) ; and (2) Schmidt-Sharkey was not arraigned on the THC possession count before being tried on that charge. Once again, we agree with the State that Schmidt-Sharkey has forfeited his right to raise these arguments on appeal.
¶ 42 Schmidt-Sharkey had ample notice regarding the THC possession charge before he was tried on that count. Although the complaint charged him with a single count of being a felon in possession of a firearm, its probable cause section expressly alleged that police recovered a baggie containing 4.75 grams of marijuana from his pocket at the time of his arrest. Thereafter, during a pretrial hearing approximately fifteen months before Schmidt-Sharkey's first trial, the State informed the defense that it planned to file an Amended Information adding a THC possession charge if the case did not settle. Defense counsel responded, "Understood." Then, during a subsequent hearing approximately thirteen months before Schmidt-Sharkey's first trial, the State announced that it had provided the defense with a copy of an Amended Information including a THC possession count, which the State intended to file if the parties were unable to reach a plea agreement. The State ultimately filed the Amended Information adding the THC possession count on March 26, 2014-over eight months before Schmidt-Sharkey's first trial.
¶ 43 On this record, it is clear that Schmidt-Sharkey had notice of the THC possession charge long before going to trial on that count. Despite this notice, he never objected to the Amended Information based on the fact that it was filed without leave of the court. Schmidt-Sharkey has therefore forfeited his right to raise that argument on appeal. See State v. Webster , 196 Wis. 2d 308, 315-16, 538 N.W.2d 810 (Ct. App. 1995) (holding that the filing of an Amended Information without leave of the court does not implicate a circuit court's subject matter jurisdiction and is instead a procedural defect that a defendant may forfeit by failing to raise a timely objection).
¶ 44 Schmidt-Sharkey also knew before his first trial that he had never entered a plea to the THC possession count. However, he did not insist on being arraigned on that count before trial. We agree with the State that, by proceeding to trial on the THC possession charge, Schmidt-Sharkey effectively entered a not guilty plea to that count. Moreover, Schmidt-Sharkey ultimately acquiesced in holding a "nunc pro tunc" arraignment on the THC possession count after sentencing.
¶ 45 Where there is no showing of prejudice to the defendant, arguments regarding the lack of a timely arraignment are forfeited by the defendant's failure to object. See Bies v. State , 53 Wis. 2d 322, 325, 193 N.W.2d 46 (1972). Here, the record clearly shows that Schmidt-Sharkey did not object to the circuit court's failure to arraign him on the THC possession count before his trial on that charge. In addition, Schmidt-Sharkey does not develop any argument that he was prejudiced by the court's failure to timely arraign him. See WIS. STAT. § 971.26 (stating no judgment "shall ... be affected by reason of any defect or imperfection in matters of form which do not prejudice the defendant"). We therefore conclude Schmidt-Sharkey has forfeited his argument regarding the lack of a timely arraignment. Furthermore, by failing to file a reply brief, Schmidt-Sharkey has conceded the State's forfeiture argument.[5] See Charolais Breeding Ranches , 90 Wis. 2d at 109.
By the Court. -Judgment affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

CCAP, which stands for Consolidated Court Automation Programs, is website that contains information entered by court staff about circuit court cases. See Kirk v. Credit Acceptance Corp. , 2013 WI App 32, ¶ 5 n.1, 346 Wis. 2d 635, 829 N.W.2d 522.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

On the first day of the retrial, the parties discussed how the case should proceed in light of the fact that Schmidt-Sharkey had never been arraigned on the THC possession count. Following that discussion, attorney Uller stated, "I would just reserve a double jeopardy argument-reserve the right to make a double jeopardy argument at a later date." However, attorney Uller did not actually raise any double jeopardy argument in the circuit court, nor did he specify the basis for any future double jeopardy argument. Under these circumstances, attorney Uller's vague reference to reserving a right to raise a double jeopardy argument was insufficient to preserve for appellate review the specific double jeopardy argument that Schmidt-Sharkey now raises on appeal.

Schmidt-Sharkey does not develop any argument that attorney Uller was ineffective by failing to raise a double jeopardy argument in the circuit court, nor does he argue that the alleged double jeopardy violation constitutes plain error or warrants reversal in the interest of justice under Wis. Stat. § 752.35. We therefore do not address those issues. See Industrial Risk Insurers v. American Eng'g Testing, Inc. , 2009 WI App 62, ¶ 25, 318 Wis. 2d 148, 769 N.W.2d 82 (we will not abandon our neutrality to develop arguments for a party).

Once again, Schmidt-Sharkey does not allege that any of his trial attorneys were ineffective, or that the failure to properly charge and arraign him on the THC possession count constitutes plain error or warrants reversal in the interest of justice under Wis. Stat. § 752.35. We therefore do not address those issues. See Industrial Risk Insurers , 318 Wis. 2d 148, ¶ 25.