STATE of Wisconsin, Plaintiff-Respondent,

v.

Ted W. URDAHL, Defendant-Appellant.

Court of Appeals

*No. 2004AP3014–CR. Submitted on briefs April 20, 2005.
—Decided July 14, 2005.*

2005 WI App 191

(Also reported in 704 N.W.2d 324.)

476

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Mark A. Eisenberg, Eisenberg Law Offices, S.C.*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Gregory M. Weber*, asst. attorney general, and *Peggy A. Lautenschlager*, attorney general.

Before Deininger, P.J., Dykman and Vergeront, JJ.

¶ 1. VERGERONT, J. The issue on this appeal is whether Ted Urdahl's federal and state constitutional right to a speedy trial was violated. After the dismissal of the charges initially filed against Urdahl, he was convicted in this action of possession of five grams or

less of cocaine with intent to deliver within 1000 feet of a park in violation of Wis. Stat. §§ 961.41(1m)(cm)1 and 961.49(2)(a) (2003–04),[1] and fleeing an officer in violation of Wis. Stat. § 346.04(3). He appeals the circuit court's order denying his motion for dismissal of the charges in this action on the ground that the delay in bringing him to trial violated his right to a speedy trial under the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution.

¶ 2. We conclude the time period from the dismissal of the charges initially filed against Urdahl to the filing of the complaint in this action is not counted for purposes of analyzing Urdahl's speedy trial claim. For the reasons we explain in the opinion, we do not decide whether the time period from Urdahl's arrest to the dismissal of the charges initially filed should be included in our analysis, but for purposes of this opinion, we assume it should be. With the relevant time period thus established, and applying the four-part balancing test of *Barker v. Wingo*, 407 U.S. 514, 530 (1972), we conclude there was no violation of Urdahl's constitutional right to a speedy trial.

## BACKGROUND

¶ 3. On April 16, 2001, the State filed two criminal complaints against Urdahl. One charged him with possession of five grams or less of cocaine with intent to deliver, possession of 500 grams or less of THC with intent to deliver, and possession of drug paraphernalia; the other complaint charged him with fleeing an officer while operating a motor vehicle. All charges arose out of

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

481

incidents occurring on April 13, 2001, and it appears from the complaints that Urdahl was arrested on that date. Urdahl made his initial appearance on April 16, 2001, in both cases, and the court entered an order for a preliminary hearing to be held on April 26, 2001. The preliminary hearing was rescheduled for May 16, 2001, and then for July 25, 2001, with both delays resulting from requests by Urdahl's counsel for continuances. On June 25, 2001, the State asked for a continuance because a material witness would be on vacation on July 25, 2001. The preliminary hearing was rescheduled for August 8, 2001. On that date the State's witnesses did not appear and the court dismissed the complaints.[2]

¶ 4. The State filed the complaint that began this action on October 3, 2001. This complaint charged Urdahl with possession with intent to deliver five grams or less of cocaine within 1000 feet of a park and possession of drug paraphernalia. The information later added the THC and fleeing charges, as well as a charge of tax stamp violation for the THC under Wis. Stat. § 139.95(2). All charges arose out of the April 13, 2001 incidents.

¶ 5. The initial appearance took place on October 15, 2001, and the court ordered a $500 personal appearance bond. Urdahl and his counsel waived the requirement that the preliminary hearing be held within twenty days of the initial appearance. The preliminary hearing was scheduled for November 29, 2001. It was continued until December 6, 2001, because defense

---

[2] This reason for the dismissal of the first two complaints is asserted in Urdahl's motion to dismiss the complaint in this action for a speedy trial violation. The State does not dispute this and, therefore, we accept it as true for purposes of this appeal.

counsel had a previously scheduled trial on November 29. At the preliminary hearing the court found probable cause to believe Urdahl had committed a felony. The arraignment took place on December 19, 2001, at which time the court entered various pretrial and scheduling orders.

¶ 6. On January 3, 2002, Urdahl through counsel filed a number of motions. On January 21, 2002, the court issued a notice of a status conference for March 20, 2002. Urdahl through counsel filed a motion on March 11, 2002, seeking relief from the scheduling order to allow him to file a motion to dismiss the tax stamp charge. On March 25, 2002, the court issued a notice of hearing for May 23, 2002, but, on defense counsel's motion, the court set a new hearing date, August 13, 2002. At that hearing the court ruled from the bench on two of the motions. The court deferred a ruling on the motion relating to other acts evidence until it read a report; and it deferred a ruling on the tax stamp motion until that motion was properly filed and served and the attorney general had a chance to respond. The court issued a written decision on the deferred motions on January 31, 2003. Urdahl through counsel asked for the opportunity to be heard on the two motions that were the subject of the written decision, and that hearing took place on April 30, 2003, with the court reaffirming its written decision denying the motions.

¶ 7. The record shows no activity between April 30, 2003 and September 26, 2003, when the court scheduled a jury trial for December 19, 2003. On December 17, 2003, the court heard and granted Urdahl's motion to discharge his attorney and to continue the trial date so that he could find a new attorney. Urdahl's new counsel filed a notice of retainer on

December 30, 2003, and on January 6, 2004, the court issued a notice scheduling the trial for March 10, 2004.

¶ 8. On January 12, 2004, Urdahl through his new counsel filed the motion to dismiss the complaint because of a violation of his right to a speedy trial. The court heard the motion on January 30, 2004. The court found that the delay was not due to any fault of the district attorney's office, that the district attorney's office did not intentionally delay the case to Urdahl's detriment, and that most of the delay was caused by Urdahl's first counsel and by the court's calendaring difficulties, the latter being the result of a lack of resources.[3]

¶ 9. On February 20, 2004, Urdahl appeared with counsel and stipulated to the factual basis for the cocaine charge (without the enhancer for the park) and the fleeing charge, and the court found him guilty of the two charges. On the cocaine charge, the court withheld sentence and placed him on probation for seven years, and on the fleeing charge the court sentenced him to one year in the county jail with work-release privileges and electronic monitoring.

## ANALYSIS

■

¶ 10. On appeal, Urdahl argues that the circuit court erred in denying his motion for dismissal of the charges because there was, he asserts, a violation of his

---

[3] Because the court reporter lost her notes of the January 30, 2004 hearing on Urdahl's speedy trial motion, there is no transcript of that hearing. The court held a hearing on September 20, 2004, at which the parties repeated their arguments on the motion and the court repeated its ruling. The transcript of this hearing is in the record.

constitutional right to a speedy trial. Whether a defendant has been denied his constitutional right to a speedy trial presents a question of law, which this court reviews de novo, while accepting any findings of fact made by the circuit court unless they are clearly erroneous. *State v. Leighton*, 2000 WI App 156, ¶ 5, 237 Wis. 2d 709, 616 N.W.2d 126.

¶ 11. Both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial.[4] In order to determine whether an accused's right to a speedy trial has been violated under the Federal Constitution, we use the four-part balancing test established in *Barker*, 407 U.S. at 530, and we use the same test under the Wisconsin Constitution. *Day v. State*, 61 Wis. 2d 236, 244, 212 N.W.2d 489 (1973). We consider (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530. The right to a speedy trial is not subject to bright-line determinations and must be considered based on the totality of circumstances that exist in the specific case. *Id.* Essentially, the test weighs the conduct of the prosecution and the defense and balances the right to bring the defendant to justice against the defendant's right to have that done speedily. *Id.* The only remedy for a violation of the right to a speedy trial is dismissal of the charges. *Id.* at 522.

---

[4] The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." Article I, section 7 of the Wisconsin Constitution provides in part that "the accused shall enjoy the right . . . in prosecutions by indictment, or information, to a speedy public trial."

A. Length of Delay

¶ 12. The first factor—the length of delay—has two roles. First, it is a triggering mechanism used to determine whether the delay is presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 651–52 (1992). Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial. *State v. Borhegyi*, 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App. 1998). If the delay is presumptively prejudicial, the length of delay is one factor in the four-part balancing test. *Doggett*, 505 U.S. at 652. As one of the four factors in the balancing test, the court considers "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim. This latter inquiry is significant to the speedy trial analysis because . . . the presumption that pretrial delay has prejudiced the accused intensifies over time." *Id.* (citations omitted).

¶ 13. The parties here disagree on the length of delay because they have differing views on when the right to a speedy trial attaches on the facts of this case. Urdahl asserts that under *Borhegyi*, 222 Wis. 2d at 511, the right attached when he was arrested on April 13, 2001. His position is that we begin counting the length of delay from that date and include the period from the dismissal of the first complaints on August 8, 2001, until the filing of the complaint beginning this action on October 3, 2001. According to Urdahl, after the first two complaints were dismissed, he was in the same position as he was from April 13 until April 16—he had been arrested but charges had not yet been filed. Urdahl arrives at a total time of thirty-two months—from his

486

April 13, 2001 arrest until December 19, 2003, the date on which the trial was scheduled to begin.

¶ 14. The State's primary position is that Urdahl's right to a speedy trial in this action did not attach until the filing of the complaint in this action on October 3, 2001. The State relies on *United States v. MacDonald*, 456 U.S. 1, 7–9 (1982), in arguing that when charges are dismissed, the right to a speedy trial no longer attaches after the dismissal. The State's alternative position is that, if we reject October 3, 2001, as the date from which to compute the delay and begin with Urdahl's arrest on April 13, 2001, we must nonetheless exclude the time between the dismissal of the first complaints and the filing of the complaint that initiated this action. This result is required by *MacDonald*, the State asserts, because during that time Urdahl was not under arrest or in custody and not subject to any criminal prosecution, but, instead, was in the same position as if the first two complaints had never been filed.

¶ 15. *Borhegyi* does not resolve the question when Urdahl's right to a speedy trial attached. In *Borhegyi*, the defendant was arrested for arson and criminal damage to property on August 26, 1995, and was charged with these offenses in a criminal complaint filed December 28, 1995. *Borhegyi*, 222 Wis. 2d at 508. The trial occurred on January 30–31, 1997. In responding to the defendant's contention that he was denied his right to a speedy trial, the State argued that the right did not attach until the filing of the criminal complaint on December 28, 1995. We rejected this argument, stating that the right attached when he first officially became the accused, which was the date of his arrest.

*Id.* at 511.[5] Thus, the issue we decided was whether the right to a speedy trial attached at the time of arrest or when the complaint was filed after the arrest. Because there was no dismissal and refiling of the charges, we did not address the question whether, if there were, the length of delay would still be calculated from that arrest.

¶ 16. *MacDonald* does resolve at least part of the issue in this case. In *MacDonald* the United States Army charged a captain with three murders in May 1970 and dismissed those charges in October 1970. *MacDonald*, 456 U.S. at 4-5. In January 1975, a grand jury returned an indictment in a civilian proceeding that charged that same individual with those same three murders. *Id.*[6] The issue before the Court was whether the time between the dismissal of the military charges and the indictment in the civilian proceeding should be considered in determining whether the delay in bringing the defendant to trial violated his right to a speedy trial. *Id.* at 3. The Court concluded it should not be. *Id.* at 9–10.

¶ 17. The Court first observed that in *United States v. Marion*, 404 U.S. 307, 313 (1971), it had held

---

[5] In *State v. Borhegyi*, 222 Wis. 2d 506, 511–12, 588 N.W.2d 89 (Ct. App. 1998), the State suggested that some portion of the time Borhegyi was incarcerated between his arrest and the filing of the complaint was related to charges other than those in the complaint. However, because we could not determine from the record what portion, if any, that was, we declined to consider whether incarceration for unrelated charges might affect the date on which the right to a speedy trial attached.

[6] The defendant had been honorably discharged from the Army and so was charged the second time in a civilian proceeding. *United States v. MacDonald*, 456 U.S. 1, 5 n.3 (1982).

that the speedy trial clause of the Sixth Amendment "does not apply to the period before the defendant is indicted, arrested or otherwise officially accused . . . ." *MacDonald*, 456 U.S. at 6. "Although delay prior to arrest or indictment may give rise to a due process claim under the Fifth Amendment, or to a claim under any applicable statutes of limitations, no Sixth Amendment right to a speedy trial arises until charges are pending."[7] *Id.* at 7 (citation omitted and footnote added).

¶ 18. The Court then stated: "Similarly, the Speedy Trial Clause has no application after the Government, acting in good faith, formally drops charges. Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause." *Id.* at 7. The Court arrived at this conclusion by identifying the interests served by the Speedy Trial Clause and reasoning that they were not implicated after charges were dismissed:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense. To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail

---

[7] Under the Due Process Clause, the defendant must demonstrate that he or she suffered actual prejudice as a result of the delay and must show that the government caused the delay for an improper purpose. *State v. Blanck*, 2001 WI App 288, ¶ 22, 249 Wis. 2d 364, 638 N.W.2d 910.

or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.

The Sixth Amendment right to a speedy trial is thus not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitation. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.

Once charges are dismissed, the speedy trial guarantee is no longer applicable. At that point, the formerly accused is, at most, in the same position as any other subject of a criminal investigation. Certainly the knowledge of an ongoing criminal investigation will cause stress, discomfort, and perhaps a certain disruption in normal life. This is true whether or not charges have been filed and then dismissed. This was true in *Marion*, where the defendants had been subjected to a lengthy investigation which received considerable press attention. But with no charges outstanding, personal liberty is certainly not impaired to the same degree as it is after arrest while charges are pending.

*Id.* at 7–8 (citations and footnotes omitted).

¶ 19. Urdahl distinguishes *MacDonald* based on the reason for dismissal: there the investigating officer concluded the charges were not true, *MacDonald*, 456 U.S. at 10 n.12, whereas in this case the State's witnesses did not appear at the preliminary hearing. This distinction is important, contends Urdahl, because it was clear to him when the initial charges were

490

dismissed that they would be refiled, and thus he was in the same position he was in between his arrest and the filing of the initial charges. However, when the charges were dismissed, Urdahl was not under arrest, and he was not re-arrested. He was thus not in custody, and he was not under any bond or bail conditions. He was "free to go about his affairs," in the words of the *MacDonald* Court, 456 U.S. at 10, as if no charges had been brought. We do not read the Court's analysis in *MacDonald* as turning on uncertainty over whether the charges would be refiled, but, rather, on the lack of legal constraints on an individual's personal liberty after charges are dismissed.

¶ 20. We conclude that, under *MacDonald*, the time period between the dismissal on August 8, 2001, of the initial charges against Urdahl and the filing of the complaint on October 3, 2001, is not included in determining whether his constitutional right to a speedy trial was violated.

¶ 21. We next consider the time period between Urdahl's arrest on April 13, 2001, and the dismissal of the first two complaints on August 8, 2001. The Court in *MacDonald* did not directly address the time period between the initial charges and their dismissal, presumably because the Court of Appeals' ruling that was the subject of the appeal did not concern that time period. *Id.* at 1. The State does not fully develop its argument on this point, but its position appears to be that, if the right to a speedy trial ceases at the time the initial charges are dismissed, then it necessarily follows that the time period relevant to the right to a speedy trial on the refiled charges cannot include the time period before the dismissal of the initial charges. (We will use as shorthand the term "predismissal time period," meaning the time period between the first

491

arrest, complaint, or indictment and the dismissal of those charges.) Neither the State nor Urdahl discusses any cases that have addressed whether or not, in light of *MacDonald,* courts are to consider the predismissal time period in analyzing whether there was a speedy trial violation with respect to refiled charges.

¶ 22. Our own research discloses that there is a conflict in other jurisdictions on this issue. A number of courts read *MacDonald,* as does the State, to compel the conclusion that the predismissal time period is not included in analyzing whether there was a speedy trial violation with respect to the refiled charges, at least where the State dismissed the charges in good faith. Some of these cases do not expressly differentiate between the predismissal time period and the time period between the dismissal and the second arrest or filing, but hold that both periods are excluded. *See United States v. Koller,* 956 F.2d 1408, 1413 (7th Cir. 1992)[8]; *United States v. Pajari,* 715 F.2d 1378, 1384 (8th Cir. 1983). Others do expressly address the predismissal time period and conclude it is also excluded. *United States v. Wallace,* 848 F.2d 1464, 1469 (9th Cir. 1988);

---

[8] Although the Seventh Circuit in *United States v. Koller,* 956 F.2d 1408, 1413 (7th Cir. 1992), does not address the predismissal time period separately from the time period between the dismissal and second arrest, it does expressly state, after citing to *MacDonald,* that "for purposes of Sixth Amendment analysis, the delay prior to Koller's second arrest . . . [was] irrelevant" and addresses only the delay beginning with the second arrest. *Koller,* 956 F.2d at 1413. In a later unpublished decision, *United States v. Aguilar,* No. 92–3623, 1993 WL 410850, at *2 (7th Cir. Oct. 14, 1993), the court expressly states that the period "between [the defendant's] first arrest and the return of the present indictment is not relevant for purposes of our Sixth Amendment analysis," citing *MacDonald, Koller,* and *United States v. Ashford,* 924 F.2d 1416, 1419 (7th Cir. 1991).

*United States v. Pullen*, 721 F.2d 788, 791 (11th Cir. 1983); *State v. Henson*, 643 A.2d 432, 438 (Md. App. 1994).

¶ 23. In contrast, some jurisdictions conclude that *MacDonald* did not resolve the issue and decide that the predismissal time period should be included. *United States v. Colombo*, 852 F.2d 19, 23–24 (1st Cir. 1988) (included if the State voluntarily dismisses the charges); *State v. Adams*, 585 A.2d 853, 855–56 (N.H. 1991) (following *Colombo*); *State v. Brazell*, 480 S.E.2d 64, 70 (S.C. 1997). *See also Berry v. State*, 93 P.3d 222, 231–32 (Wyo. 2004) (date of original arrest is controlling, though usually the time between dismissal and recharging is excluded; here it is not excluded because defendant was retained in custody).

¶ 24. We are reluctant to decide which approach to follow in the absence of fuller briefing by the parties, and we are satisfied that we need not make that decision in this case. As we explain in considering the second *Barker* factor—the reason for the delay—at most two weeks of the predismissal time period would be counted against the State, even if we were to decide that the predismissal time period should initially be included in determining the length of delay. We will therefore assume without deciding that we do include the predismissal time period.

¶ 25. Adding the four predismissal months to the approximately twenty-six and one-half months from the filing of the complaint on October 3, 2001, to the scheduled trial date of December 19, 2003, results in a total of thirty and one-half months.[9] Because this is greater than one year, we presume prejudice. We there-

---

[9] We consider the scheduled trial date to be the end point of the relevant time period because Urdahl does and the State appears to agree.

fore analyze the remaining three factors, and then discuss how we weigh all four factors.

B. Reasons for Delay

¶ 26. When considering the reasons for the delay, courts first identify the reason for each particular portion of the delay and accord different treatment to each category of reasons. A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or over-crowded courts, though still counted, are weighted less heavily. *Borheygi*, 222 Wis. 2d at 512 (citing *Barker*, 407 U.S. at 531). On the other hand, if the delay is caused by something intrinsic to the case, such as witness un-availability, that time period is not counted. *State v. Ziegenhagen*, 73 Wis. 2d 656, 668, 245 N.W.2d 656 (1976) (citing *Barker*, 407 U.S. at 531, 534). Finally, if the delay is caused by the defendant, it is not counted. *Norwood v. State*, 74 Wis. 2d 343, 354, 246 N.W.2d 801 (1976).

¶ 27. With respect to the first complaints, Urdahl's counsel requested two continuances of the preliminary hearing. Thus, the period from the originally scheduled preliminary hearing on April 26, 2001, until the second rescheduled hearing on July 25, 2001, is not counted. The reason for the third continuance, to August 8, 2001, was the unavailability of a witness for the State on the rescheduled date. Thus, the period from July 25 to August 8 is not counted. We are left with the time between the arrest on April 13, 2001, and the originally scheduled preliminary hearing on April 26, 2001. To the extent this time period can be considered a delay at all, it is due to the court's calendar and thus is not weighted heavily against the State.

¶ 28. The time period from the filing of the complaint initiating this action, October 3, 2001, until the preliminary hearing on December 6, 2001, was approximately two months. But for Urdahl's waiver and requests for continuance, the preliminary hearing would presumably have been held within twenty days of the initial appearance on October 15, 2001, or by November 4, 2001. Thus we do not count the approximately one month from November 4, 2001 to December 6, 2001, but only the one month from October 3, 2001 to November 4, 2001. To the extent that one month between the filing of the complaint and (what would have been) a timely preliminary hearing can be considered a delay at all, it is in this case attributable to the court's calendar and so is not weighted heavily against the State.

¶ 29. The time period from December 6, 2001 until April 30, 2003—approximately seventeen months —was taken up with resolving a number of motions filed by Urdahl, the first of which Urdahl filed on January 3, 2002. The status conference scheduled for March 20 was apparently removed from the calendar because of Urdahl's motion for relief from the scheduling order, and a hearing was then scheduled for May 23, 2002. This approximately two-month period between March 20, 2002 and May 23, 2002, should not be counted because it was due to Urdahl's request for relief from the scheduling order. The period of somewhat over two and one-half months from May 23, 2002 to August 13, 2002, should not be counted because that was due to a defense request for a continuance of the May 23 hearing. Of the approximately five and one-half months from the hearing on August 13, 2002, until the written decision was issued on January 31, 2003, at least forty days were due to the fact that Urdahl had not yet technically filed the motion and had not served it on the

495

attorney general and the court therefore established time periods for doing so. The remainder of the five and one-half months were due to the court's heavy schedule, attributable to the State but not weighted heavily against it.

¶ 30. It appears from the transcript of the April 30, 2003 hearing that the court acknowledged that it had issued the January 31, 2003 written decision on the two motions without giving Urdahl the opportunity to present additional argument as anticipated. Thus, the time period from the date of the written decision until the April 30, 2003 hearing is counted against the State, but it is not weighted heavily. In summary, no more than eleven and one-half months from December 6, 2001 until April 30, 2003, is attributable to the State, and no portion is weighted heavily.

¶ 31. The trial was not scheduled until December 19, 2003, due to the court's congested calendar. Thus, the approximately seven and one-half months from April 30, 2003 to December 17, 2003, when Urdahl moved to discharge his attorney and continue the trial date, is counted against the State, but is not weighted heavily.

¶ 32. In summary, considering the predismissal time period, but not the time between dismissal and the filing of this complaint, and subtracting delays caused by Urdahl and by the unavailability of witnesses, there are at most approximately twenty and one-half months that are counted against the State. However, since the delays during that time period were due to the court's calendar, the reason for delay is not heavily weighted against the State.

C. Request for a Speedy Trial

¶ 33. Urdahl did not assert his right to a speedy trial until he filed his motion to dismiss on January 12,

496

2004—after the trial had been scheduled and continued at his request and more than twenty-seven months after the complaint in this action was filed. Although Urdahl is correct that the Court in *Barker* stated that a defendant has "no duty to bring himself to trial" because that is the State's duty, *Barker*, 407 U.S. at 527, the Court also stated: "We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532.

D. Prejudice

¶ 34. Courts consider the element of prejudice with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense. *Ziegenhagen*, 73 Wis. 2d at 671. The third interest is the most significant because "the inability of a defendant [to] adequately . . . prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532. While prejudice is an important factor in the analysis, it is not necessary that a defendant show prejudice in fact in order to establish a speedy trial violation. *Leighton*, 237 Wis. 2d 709, ¶ 25.

¶ 35. Urdahl was not incarcerated but was released on bail during both court actions. Thus the first interest is not implicated. He did, no doubt, experience anxiety from having the charges hanging over him during the proceedings. The second interest is therefore implicated. However, without more than the bare fact of unresolved charges—which exists in every criminal case—we view the prejudice to the second interest as minimal.

¶ 36. As for impairment of his defense, Urdahl asserts that "[i]t is unlikely that the alleged co-conspirator, an individual named Manny, was still around" by December 19, 2003, the scheduled trial date. Urdahl does not describe what steps, if any, he took to attempt to locate Manny and does not state that he would have called Manny as a witness at trial. We therefore consider Urdahl's argument that his defense was impaired to be too speculative to show prejudice on this ground.

E. Balancing of the Factors

¶ 37. Balancing all four factors, we conclude that Urdahl's right to a speedy trial was not violated. The twenty and one-half months attributable to the State is certainly a long period of time, but not extraordinarily long, and no part is weighted heavily against the State because it was due to the court's congested calendar. Balanced against that length of time is Urdahl's failure to assert his right to a speedy trial until after the trial was scheduled, which we weigh heavily against his claim that his right to a speedy trial was violated. *See Barker*, 407 U.S. at 531–32. In addition, Urdahl's requests for continuances "significantly diminish the weight of [his] demand for a speedy trial." *State v. Williams*, 2004 WI App 56, ¶ 41, 270 Wis. 2d 761, 677 N.W.2d 691 (citation omitted). Finally, he has shown only minimal prejudice. Accordingly, the circuit court correctly denied Urdahl's motion to dismiss this complaint.

*By the Court.*—Judgment affirmed.