COURT OF APPEALS
DECISION
DATED AND FILED

July 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

NOTICE

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2017AP2223-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2013CF139

IN COURT OF APPEALS
DISTRICT III

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

MAURICE L. WILLIAMS,

    DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Marathon County: GREGORY B. HUBER, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Maurice Williams appeals from an amended judgment convicting him, following a jury trial, of eight drug-related felonies and

one misdemeanor.[1] He also appeals from an order denying his postconviction motion for dismissal of the charges based upon an alleged speedy trial violation or, in the alternative, for a determination of his eligibility for the Substance Abuse Program (SAP). We conclude there was no violation of Williams' constitutional right to a speedy trial and the circuit court properly determined Williams was ineligible for the SAP. Accordingly, we affirm the judgment of conviction and postconviction order.

## BACKGROUND

¶2 Williams was arrested and charged in connection with this case in February 2013, but he was not brought to trial until April 2016, more than three years later. Throughout that time period, Williams filed two formal speedy trial demands by counsel, three pro se speedy trial demands, and multiple pro se letters more informally asserting his right to a speedy trial.

¶3 The trial was initially scheduled for July 10, 2013, but it was removed from the circuit court's calendar after the court allowed Williams' first attorney, Richard Voss, to withdraw as counsel less than a month before the scheduled trial date. A second trial date was scheduled for May 19, 2014, but it was removed after the court allowed Williams' second and third attorneys, Julianne Lennon and John Bachman, each to withdraw as counsel. A third trial date was scheduled for November 11, 2014, but it was removed after the court

---

[1] Specifically, Williams was convicted of five counts of a second or subsequent offense of manufacturing or delivering less than one gram of cocaine, as a repeater; one count of a second or subsequent offense of possession of greater than five to fifteen grams of cocaine with intent to deliver, as a repeater; one count of a second or subsequent offense of maintaining a drug trafficking place, as a repeater; one count of a second or subsequent offense of possession of THC, as a repeater; and one count of possession of drug paraphernalia, as a repeater.

allowed Williams' fourth attorney, John Bliss, to withdraw as counsel the day before the trial was due to begin. A fourth trial date was scheduled for March 24, 2015, but it was again removed after the court allowed Williams' fifth attorney, John Wallace, to withdraw as counsel. A fifth trial date was scheduled for November 27, 2015, but it was rescheduled to a sixth-scheduled date of August 24, 2015, in response to one of Williams' speedy trial demands, and it was then moved to a seventh-scheduled date of September 28, 2015, without any explanation in the record. The September 28, 2015 scheduled trial date was removed from the calendar after Williams' sixth attorney, Amanda Skorr, sought a competency evaluation for Williams. The competency issue was resolved on January 6, 2016, and the matter finally went to trial on April 19, 2016.

¶4     Meanwhile, discovery efforts were ongoing throughout the pendency of the case. Williams filed his initial general discovery demand on February 28, 2013. On June 22, 2013, Williams filed a motion seeking to compel the discovery of specific enumerated items, most of which involved audio or video recordings or other information that would identify confidential informants. The State refused to turn over much of the requested information relating to confidential informants, citing WIS. STAT. § 905.10 (2017-18),[2] but it offered a stipulation to turn over a DVD containing audio and video recordings from some of the controlled buys if Williams' counsel would agree not to share the items turned over. Williams then filed an additional motion to compel specific discovery, challenging the State's theory that the DVD containing digital media of the controlled buys was

_____

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

privileged under § 905.10, and asserting that the defense had a right to the DVD under WIS. STAT. § 971.23(1).

¶5    The circuit court held a hearing on the discovery motions on August 23, 2013, during which it approved a stipulation between the parties for the State to turn over a DVD containing digital media of the controlled buys. The prosecutor advised the court that his office was still in the process of attempting to comply with Williams' other discovery demands due to the voluminous nature of the file. The court directed the parties to discuss the remaining discovery demands and then schedule a status conference to address any further disputes.

¶6    Following the August 23, 2013 hearing, the State turned over three DVDs to Williams pursuant to the stipulation, representing all of the digital media then in the State's possession. On September 20, 2013, Williams' attorney sent correspondence to the prosecutor specifying the outstanding items of discovery being sought, and the prosecutor subsequently directed his administrative assistant to verify that many of them had been sent to Williams. However, the State continued to insist that other information and materials being sought were protected under WIS. STAT. § 905.10, and that Williams would therefore need to file an *Outlaw* motion and get a court order to disclose the identities of the confidential informants before the State would provide the additional materials. *See **State v. Outlaw***, 108 Wis. 2d 112, 125-26, 321 N.W.2d 145 (1982) (setting forth the procedure for a court to determine whether a confidential informant can provide testimony necessary to a fair determination of the defendant's guilt).

¶7    Nearly a year later, on July 24, 2014, Williams filed both an *Outlaw* motion and a motion to dismiss the case based upon an alleged failure by the State to comply with a discovery order. The circuit court held a hearing on those

motions in August 2014. The State did not contest the *Outlaw* motion, but it argued that the court had not previously ordered the State to turn over anything other than the material covered by the stipulation. The court agreed that it had not issued an order on discovery, and it therefore concluded there had been no discovery violation and denied the motion to dismiss. At a status conference held on October 31, 2014, defense counsel confirmed that the State had provided the outstanding discovery documents and surveillance videos that Williams needed to proceed to trial.

¶8 Finally, in November 2014, the State sent Williams copies of seven State Crime Laboratory reports that had been generated on June 20, 2013, and November 4, 2014. Based upon the timing of these disclosures, these reports appear to relate to the Count 5 charge of delivery of cocaine that was added in an amended complaint, with Williams' consent, to avoid having the State file an additional case.

¶9 After his conviction, the circuit court sentenced Williams and determined that he was ineligible for the SAP, noting there had been no showing that Williams had an addiction problem. Williams filed a postconviction motion claiming that he had been denied his constitutional right to a speedy trial and that the court had erroneously exercised its discretion in finding him ineligible for the SAP because the presentence investigation (PSI) had mentioned that Williams used marijuana and the court had previously found him eligible for the program.

¶10 At the postconviction hearing, the circuit court determined that the State was not required to turn over any of the additional information relating to confidential informants until Williams had filed his *Outlaw* motion and obtained a court order. The court also observed that "obviously [Williams] was

manipulating … he pretty much had the same [modus operandi] for all these attorneys: to get them off the case." Specifically, the court stated that Williams "basically … accused each one of them of misconduct, or not being prepared, or conspiring with the State," which rendered the attorney-client relationship nonviable. The court viewed Williams' conduct as a deliberate tactic employed to prevent his case from going to trial.

¶11 Accordingly, the circuit court found the reasons for the delays in this case were "totally on Mr. Williams" and could not be attributed to the State. The court further determined that Williams had suffered little to no prejudice from the delays and concluded that, on balance, Williams had failed to establish a violation of his constitutional right to a speedy trial. The court also stood by its determination from sentencing that Williams was ineligible for the SAP. Williams now appeals.

## DISCUSSION

### 1. Speedy Trial

¶12 Both the federal and state constitutions guarantee a defendant the right to a speedy trial. *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. To determine whether a defendant's right to a speedy trial has been violated, a court applies a balancing test that takes into account: (1) the length of the delay; (2) the reasons for the delay; (3) the defendant's assertion of the right; and (4) prejudice to the defendant resulting from the delay. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514 (1972)). Based on the totality of the circumstances, this test weighs the State's "right to bring the defendant to justice against the defendant's right to have that done speedily." *Id.* Unless there is a substantial delay resulting in presumptive prejudice under the first factor, the court

need not consider the other factors. *State v. Borhegyi*, 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App. 1998).

¶13　We will uphold the circuit court's findings of fact unless they are clearly erroneous, but we independently determine whether those facts establish a speedy trial violation. *Urdahl*, 286 Wis. 2d 476, ¶10. If a violation is established, the only remedy is dismissal of the charges. *Id.*, ¶11.

¶14　In this case, the State concedes the length of delay of over three years between the date of arrest and date of trial was presumptively prejudicial. *See Borhegyi*, 222 Wis. 2d at 510 (determining a twelve-month delay to be presumptively prejudicial). It is also undisputed that Williams asserted his right to a speedy trial on multiple occasions throughout the proceedings. Therefore, the first and third factors each weigh in favor of finding a speedy trial violation.

¶15　As to the second factor, in considering the reasons for the delay, we are first to identify what caused each portion of the delay and may then accord different treatment to different categories. *Urdahl*, 286 Wis. 2d 476, ¶26. For instance:

> A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily. On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted. Finally, if the delay is caused by the defendant, it is not counted.

*Id.* (citations omitted).

¶16　Here, the parties disagree not only as to what caused each period of delay, but also as to how to apportion the delay into identifiable time periods.

7

Williams bases his arguments related to the second factor on the premise that much of the delay was caused by discovery violations attributable to the State, and he therefore asks us to evaluate the time periods between when his various discovery requests were made and when the requested discovery was provided. The State bases its arguments relating to the second factor on the premise that much of the delay was caused by Williams' repeated discharges of counsel, and it therefore asks us to evaluate the delay in terms of the discharge and appointment dates of Williams' successive attorneys.

¶17     To begin, we note the circuit court's determinations that the State committed no discovery violations and that Williams engaged in a pattern of accusing counsel of misconduct are factual findings. We conclude neither of those findings is clearly erroneous. The record shows the State's delay in turning over discovery related to confidential informants was the result of defense counsel's failure to file a timely *Outlaw* motion to compel the discovery of otherwise protected information.[3] The record further shows Williams discharged attorney Voss of his own accord; the court allowed attorney Lennon to withdraw because Williams filed a grievance against her with the Office of Lawyer Regulation; the court allowed attorney Bachman to withdraw because Williams accused him of pretrial misconduct and could not agree with him "on whether water is wet"; the court allowed attorney Bliss to withdraw because Williams accused him of conspiring with the district attorney to deny Williams his right to a fair trial; and the court allowed attorney Wallace to withdraw because Williams accused him of being biased against Williams and failing to communicate with him.

---

[3] We do not address whether defense counsel provided ineffective assistance with regard to discovery because Williams did not raise the issue, either in the circuit court or on appeal.

¶18 Next, we conclude the most logical way to analyze the reasons for delay in this case is to divide the total time until trial into the periods between each scheduled trial date. The first period consists of 142 days between February 18, 2013, when the complaint was filed, and July 10, 2013, when the matter was first scheduled for trial. Although this period includes Williams' discharge of his first attorney, we attribute all 142 days to the State because we see nothing in the record to show that the initial trial date was chosen for any reason other than the circuit court's calendar.

¶19 The second period consists of 313 days between the first-scheduled trial date on July 10, 2013, and the second-scheduled trial date on May 19, 2014. The trial was removed from the calendar because Williams' second attorney, Lennon, told the circuit court that she could not be ready for trial by the first-scheduled date, and a new date was not set until Williams had been appointed his third attorney, Bachman. This was a foreseeable consequence of Williams' decision to discharge his first attorney and his allegations against his second attorney. Based upon the court's factual findings, the ongoing discovery dispute during this period was also attributable to the defense because Lennon failed to file a timely motion to compel the disclosure of otherwise protected information about confidential informants. We therefore attribute all 313 days in the second period to Williams.

¶20 The third period consists of 176 days between the second-scheduled trial date on May 19, 2014, and the third-scheduled trial date on November 11, 2014; the fourth period consists of 133 days between the third-scheduled trial date on November 11, 2014, and the fourth-scheduled trial date on March 24, 2015;

and the fifth period consists of 153 days between the fourth-scheduled trial date on March 24, 2015, and the sixth-scheduled trial date on August 24, 2015.[4] The parties have not pointed to any portion of the transcripts showing a contemporaneous discussion about why the trial was removed from the calendar for the second, third or fourth times or how the third, fourth and sixth dates were chosen. However, it is a fair inference that the trial was rescheduled for the second time because Williams' third attorney, Bachman, was allowed to withdraw about six weeks before the second-scheduled date; that it was rescheduled for the third time because Williams' fourth attorney, Bliss, was allowed to withdraw the day before the third-scheduled trial date; and that it was rescheduled for the fourth time because Williams' fifth attorney, Wallace, was allowed to withdraw about four weeks before the fourth-scheduled trial date. Given the circuit court's factual finding that Williams had a pattern of unreasonably finding fault with counsel, we reject Williams' argument that the court erred in allowing these attorneys to withdraw over Williams' objections, or that the delays created each time a new attorney needed to prepare are somehow attributable to the State. We therefore attribute all 462 days from the third, fourth and fifth periods of time to Williams.

¶21 The sixth period consists of 35 days between the sixth-scheduled trial date on August 24, 2015, and the seventh-scheduled trial date on September 28, 2015. The seventh period consists of 204 days between the seventh-scheduled trial date on September 28, 2015, and the ultimate trial date of April 19, 2016. Both of these delays were caused by requests by Williams' sixth

---

[4] We do not include the fifth-scheduled trial date in our analysis, because the sixth-scheduled date shortened rather than lengthened the time to trial.

attorney, Skorr, for competency evaluations. We therefore attribute all 239 days from the sixth and seventh periods of delay to Williams.

¶22 Taken together, we attribute 1014 of the 1156 days from the filing of the complaint to the day of trial to Williams. Because delays attributable to the defendant are not counted in second factor analysis, and the initial delay attributable to the state due to the court's calendar is not weighed heavily, we conclude that the third speedy trial factor weighs heavily in favor of the State and against finding a speedy trial violation.

¶23 Turning to the fourth factor, Williams contends he was prejudiced by the delays in several ways. First, he says it was important for him to have his case tried before he was sentenced after revocation in a prior case. However, the argument he made in the circuit court on this point in connection with his early speedy trial demands rested on Williams' erroneous presumption that he would be acquitted on the charges in this case, resulting in a lesser sentence on the revoked case. Williams now asserts that having been sentenced first on the revocation put undue pressure on him to accept a plea in this case in order to obtain a concurrent sentence. That argument also goes nowhere, however, as Williams did in fact go to trial in the present case.

¶24 Williams next asserts he suffered prejudice in the form of anxiety while in custody awaiting trial. We agree that awaiting trial for over three years would reasonably cause anyone to suffer some degree of anxiety. However, we also agree with the State that a portion of the anxiety Williams describes is as much attributable to being incarcerated on the other charge for which he was revoked as it is to merely awaiting trial.

¶25    Williams also asserts he suffered prejudice from the fact that he aged out of potential eligibility for the Challenge Incarceration Program while the case was pending. *See* WIS. STAT. § 302.045(2)(b) (2011-12) (inmate must be under the age of forty when beginning the program). However, we note that the first two trial dates were scheduled while Williams was still eligible. As we have discussed above, the case was rescheduled due to the appointment of successor counsel attributable to Williams.

¶26    Finally, Williams contends that the State lost photographs taken during the execution of the search warrant and some witnesses lost recollection of details relating to the police investigation of the charges and Williams' arrest. Williams has not attempted to show, however, that the lack of photographs or recall by any of the witnesses had any likely effect on the outcome of the trial.

¶27    We conclude that whatever prejudice in the form of anxiety Williams experienced awaiting trial weighs moderately, at most, in favor of finding a speedy trial violation. On balance, we conclude the fact that the vast majority of the delay in this case was attributable to Williams outweighs the other factors. We therefore determine that there was no violation of Williams' constitutional right to a speedy trial.

**2. Eligibility for the SAP**

¶28    Williams contends the circuit court erroneously exercised its discretion in denying him eligibility for the SAP. Specifically, he challenges the court's determination that he did not have a substance abuse problem. Williams contends this determination was erroneous because: (1) he was convicted of possessing THC and drug paraphernalia; (2) Williams told the PSI author that he had been using marijuana "to self-medicate" right up until his current

incarceration, and that it was "still causing problems"; and (3) the court had found Williams eligible for the SAP in earlier cases. None of these arguments are persuasive.

¶29 First, the fact that Williams was dealing drugs is not conclusive evidence that he was also using them. Second, the fact that Williams may have used marijuana in the past does not compel the conclusion that he was suffering from an addiction, particularly when he had been incarcerated for the three years prior to sentencing in this case. Similarly, the circuit court's determination that Williams was eligible for the SAP in prior cases was dependent on the evidence and arguments presented to the court in those cases, not the evidence and arguments presented in this case. Unlike the prior cases, here the State opposed an eligibility determination and Williams did not ask for one at the sentencing hearing. We conclude that the circuit court properly exercised its discretion in denying eligibility based upon the information and arguments before it.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.