COURT OF APPEALS
DECISION
DATED AND FILED

January 27, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1-CR**

**STATE OF WISCONSIN**

Cir. Ct. No. **2010CF730**

**IN COURT OF APPEALS
DISTRICT II**

---

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

 V.

JEROME S. BURKHART, JR.,

    DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Racine County: CHARLES H. CONSTANTINE and MARK F. NIELSEN, Judges. *Affirmed*.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Jerome S. Burkhart, Jr., appeals from a judgment of conviction and an order denying his postconviction motion.[1]  He contends that he was denied his constitutional right to a speedy trial.  We disagree and affirm.

## BACKGROUND

¶2    In July 2008, in the City of Racine, two masked men broke into the home of Terrence Miller, robbed him, and shot him to death.  Police received information from various informants implicating Burkhart and his brother-in-law Damont L. Carey in the crimes.

¶3    Burkhart and Carey were taken into federal custody in April 2010.  During an interview with police, Carey admitted to participating in the break-in/robbery and identified Burkhart as his co-actor and the person who shot Miller.

¶4    In May 2010, the State filed a complaint charging Burkhart with first-degree intentional homicide, armed robbery, and armed burglary.  It also charged Carey with the same crimes.

¶5    Burkhart was scheduled to be tried numerous times.  However, he was not actually tried until June 2016—over six years after the filing of the complaint.  A jury found Burkhart guilty on all counts, and the circuit court sentenced him to life imprisonment.

¶6    Burkhart filed a postconviction motion asserting that he was denied his constitutional right to a speedy trial.  Following a hearing on the matter, the

---

[1] The Honorable Charles H. Constantine presided over trial and entered the judgment of conviction.  The Honorable Mark F. Nielsen entered the order denying Burkhart's postconviction motion.

2

circuit court denied the motion. The court cited multiple reasons for the case's delay and noted that Burkhart, who was serving a federal sentence at the time,[2] suffered no prejudice as a result. Burkhart now appeals. Additional facts are set forth below.

## DISCUSSION

¶7 On appeal, Burkhart renews his claim that he was denied his constitutional right to a speedy trial. He asks that we vacate his convictions and dismiss the charges against him with prejudice.

¶8 "Both the Sixth Amendment to the United States Constitution and article I, section 7 of the Wisconsin Constitution guarantee an accused the right to a speedy trial." *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324. If a speedy trial violation has occurred, the charges against the defendant must be dismissed. *Id*. Whether a defendant has been denied the right to a speedy trial is a question of law that we review de novo. *Id*., ¶10.

¶9 The right to a speedy trial is not subject to bright-line determinations and must be assessed based on the totality of the circumstances. *Id*., ¶11. To determine whether a defendant's right has been violated, we must balance four factors: (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of the right, and (4) the prejudice to the defendant. *Id.* (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). We consider each one in turn.

---

[2] In October 2010, Burkhart was sentenced to 18 years of imprisonment for federal drug and weapon offenses.

3

*Length of the Delay*

¶10    The first factor—the length of the delay—is a "triggering mechanism used to determine whether the delay is presumptively prejudicial." *Id.*, ¶12.  A post-accusation delay is considered to be presumptively prejudicial when it "approach[es] one year."  *Id.*  It is only necessary to inquire into the other factors when a delay is presumptively prejudicial.  ***State v. Borhegyi***, 222 Wis. 2d 506, 510, 588 N.W.2d 89 (Ct. App. 1998).

¶11    The State concedes that the length of the delay in bringing Burkhart to trial in this case is presumptively prejudicial.  We agree.  Therefore, we examine the remaining factors.

*Reasons for the Delay*

¶12    The second factor directs us to consider the reasons for the delay. We assign different weights to different reasons.  For instance:

> A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State, while delays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily.  On the other hand, if the delay is caused by something intrinsic to the case, such as witness unavailability, that time period is not counted.  Finally, if the delay is caused by the defendant, it is not counted.

*Urdahl*, 286 Wis. 2d 476, ¶26 (citations omitted).

¶13    It is difficult to discern all of the reasons for the delay in this case. Indeed, the parties agree that there are gaps in the case's timeline that are not explained by the record.  However, the circuit court found several reasons that contributed to the delay.

4

¶14 First and foremost, the State's prosecution of Burkhart was delayed by its prosecution of Carey. The two were co-defendants, and Carey had identified Burkhart as his co-actor and the person who shot Miller. The State initially brought the cases together, which resulted in scheduling postponements.[3] Once the cases were severed and Carey invoked his Fifth Amendment right against self-incrimination, he became an unavailable witness. The State decided to convict him first to make him available. For a variety of reasons, it was unable to do so until June 2016—the same month that it tried Burkhart.[4]

¶15 The State's desire to secure a conviction against Carey first to make him an available witness is not unlike the situation in *Barker*. There, the defendant was not brought to trial for murder until more than five years after his arrest. *Barker*, 407 U.S. at 516, 518. The primary reason why was so that his codefendant could be convicted and utilized as a witness without the possible problem of self-incrimination. *Id.* at 516. The Supreme Court recognized that this reason justified some delay, though it concluded that the period at issue was "too long." *Id*. at 534. Nonetheless, it did not find a speedy trial violation due to the defendant's failure to assert the right and the absence of serious prejudice. *Id.*

¶16 Other reasons cited by the circuit court for the delay in this case include: (1) the large and complex nature of the prosecution, (2) repeated

---

[3] For example, Burkhart did not have his initial appearance until March 2011—the same month that the federal charges against Carey were resolved and he could be brought to the Racine County Jail. Burkhart's preliminary hearing was also adjourned so that it could coincide with Carey's hearing.

[4] Carey was ultimately convicted following a guilty plea to first-degree intentional homicide.

difficulties in transferring Burkhart from federal prison to state court,[5] and (3) Burkhart's decision to change counsel on the first day of a scheduled trial back in July 2015. Again, delay caused by something intrinsic to the case or by the defendant himself is not counted for purposes of assessing an alleged speedy trial violation. *Urdahl*, 286 Wis. 2d 476, ¶26.

¶17 In the end, we conclude that most of the delay in this case occurred for valid reasons. To the extent that it did not and can be attributed to the State, we do not weigh it heavily. That is because there is no evidence of bad faith or any deliberate attempt to hamper Burkhart's defense.

*Assertion of the Right*

¶18 The third factor directs us to consider whether Burkhart asserted his right to a speedy trial. There is no requirement that a defendant demand a speedy trial in order to preserve the right. *Barker*, 407 U.S. at 528. But a defendant's assertion of the right to a speedy trial is given strong evidentiary weight in determining whether the right has been violated. *Id.* at 531-32.

¶19 Here, Burkhart entered an oral demand for a speedy trial at a status conference on August 12, 2011; however, after a brief discussion with the circuit court, he withdrew it. He did not demand a speedy trial again until a hearing on September 16, 2015.[6] The fact that Burkhart did not unequivocally invoke his

---

[5] The State was unable to produce Burkhart at multiple hearings because the federal prison would not authorize his release.

[6] This prompted the circuit court to set a trial date of February 22, 2016, which was about "as quick as" the court could "do it." That trial date was later adjourned to March 28, 2016. It was then adjourned again so that Carey could be sentenced and "out of jeopardy."

6

right to a speedy trial until his case had been pending for over five years weighs heavily against him.

*Prejudice*

¶20   The last factor directs us to consider whether Burkhart was prejudiced by the delay in bringing him to trial.   In assessing prejudice, we examine the three interests that the speedy trial right was designed to protect: "prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense." *Urdahl*, 286 Wis. 2d 476, ¶34.

¶21   With respect to the first interest, the fact that Burkhart was serving a separate federal sentence at the time eliminates any concern of oppressive pretrial incarceration.   *See West v. Symdon*, 689 F.3d 749, 753 (7th Cir. 2012) (recognizing that a defendant incarcerated for a separate offense during a delay cannot claim that he suffered oppressive pretrial incarceration).[7]

¶22   With respect to the second interest, any anxiety felt by Burkhart was also ameliorated by his federal sentence.   As the circuit court observed, "any such stress was no doubt mitigated by the defendant's knowledge that he had 18 years to serve in federal prison before the verdict in his homicide case could either free him or [further] deprive him of his liberty."

---

[7] Although Burkhart now complains that the conditions in the Racine County Jail were worse than the out-of-state federal prison, he did, at multiple times, indicate that he wished to stay in jail in order to better communicate with counsel and prepare for trial.

¶23    With respect to the third interest, Burkhart asserts that his defense was impaired in several ways. Specifically, he complains that (1) he was not able to meaningfully cross-examine a jailhouse informant named Raymond Ellison who implicated him in a sworn affidavit in December 2009,[8] and suffered memory loss from a car accident in December 2014, (2) he was damaged by a jailhouse informant named Germane Jones who came forward in June 2013, and (3) he was disadvantaged by Carey's testimony at trial. None of these complaints are persuasive.

¶24    To begin, Burkhart does not specify how his ability to cross-examine Ellison was compromised. At trial, Ellison recalled talking with Burkhart in jail, acknowledged that he could not remember some of the details due to his accident, verified his signature on the sworn affidavit, and explained his reasons for initially contacting law enforcement. Burkhart does not identify what specific questions he was prevented from asking Ellison. Furthermore, the fact that Ellison could not recall some of the details in his affidavit would have detracted from his credibility, thus benefitting Burkhart.

¶25    As for the emergence of Jones as a witness, Burkhart has no one to blame but himself. Jones testified that, while housed together in a federal prison, Burkhart gave him a detailed account of the crimes. Again, this included the nickname of Miller, the sequence of events, and presence of other people in the house. It also included the location of the items stolen and how many times

---

[8] According to Ellison's sworn affidavit, while housed together in the Racine County jail, Burkhart provided him with a detailed account of the crimes. The affidavit explains why Miller was chosen as a target and how Burkhart followed him home, put on a mask, robbed him, and shot him. The affidavit contains additional details, including the nickname of Miller, the sequence of events, and presence of other people in the house.

Burkhart shot Miller. Jones' testimony was consistent with Ellison's sworn affidavit and Carey's statement to police and provided details only Burkhart would have known. Because Burkhart created this prejudice himself, we do not attribute it to the delay in his prosecution.

¶26 Finally, the fact that the State was able to secure the testimony of a co-defendant after his conviction does not appear to be a type of prejudice recognized by case law on speedy trial violations. *See United States v. Trueber*, 238 F.3d 79, 90 (1st Cir. 2001) ("We have found no authority to support this notion of prejudice, and it appears to us to be too speculative."). In any event, Carey's testimony at trial was actually favorable to Burkhart. Not only did he recant his statement to police, but he also provided an alibi for Burkhart and implicated another man in the shooting. If believed by the jury, Carey's testimony would have exonerated Burkhart.

¶27 On these facts, the lack of prejudice weighs heavily against Burkhart.

*Conclusion*

¶28 Balancing the above factors, we conclude that Burkhart's right to a speedy trial was not violated. While the length of the delay was presumptively prejudicial, there were valid reasons for most of it. Given these reasons, Burkhart's failure to timely assert the right, and the lack of prejudice incurred, we are satisfied that the circuit court correctly denied Burkhart's postconviction motion.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).