STATE, Plaintiff in error, v. ZIEGENHAGEN, Defendant in error.

*No. 75-283-CR. Argued September 14, 1976.—
Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 656.)

For the plaintiff in error there was a brief by *Bronson C. La Follette,* attorney general, *Gerald E. Clickner,* Racine county district attorney, *Thomas P. Finley* and *Timothy L. Vocke,* Racine county assistant district attorneys, and oral argument by *Mr. Finley.*

For the defendant in error there was a brief by *Martin I. Hanson, Eugene A. Gasiorkiewicz* and *Schoone, McManus & Hanson, S. C.,* and oral argument by *Mr. Gasiorkiewicz,* all of Racine.

HEFFERNAN, J. The question presented in this case is whether the trial judge properly dismissed the information filed against Jessie G. Ziegenhagen on the grounds that he had been denied the constitutional right to speedy trial when the delay of twenty-four months between arraignment and trial was occasioned by the negligence of the state and under circumstances showing that the defendant's witnesses, because of the delay, were either unavailable or unable to recall with clarity the incidents that led to the charge. We conclude that Ziegenhagen was denied his constitutional right to speedy trial and affirm the trial court's order dismissing the complaint and information.

The charge against Jessie G. Ziegenhagen arose out of an incident that occurred on June 22, 1973. On that date an officer of the Racine police department attempted to take the brother of Jessie Ziegenhagen into custody for questioning in respect to a parole violation. During the course of the officer's attempt to take Ziegenhagen's brother into custody, the police officer went on the premises of Jessie Ziegenhagen. Jessie Ziegenhagen attempted to block the officer's pursuit of his brother; and in the course of the confrontation, Jessie Ziegenhagen struck the police officer.

A complaint was filed on June 29, 1973, charging the defendant Ziegenhagen with battery to a police officer in contravention of sec. 940.205, Stats. A warrant was issued; and upon Ziegenhagen's initial appearance, he was released on his own recognizance. The record does not reveal that Ziegenhagen was at any time restrained of his liberties.

This case, which commenced on June 29, 1973, by the filing of the complaint, was not terminated in the trial court until July 22, 1975, when Judge RASKIN ordered dismissal of the charge with prejudice.

A perusal of the record shows that the prosecution of the case proceeded, initially at least, with reasonable

promptness. Although a defendant has the statutory right to preliminary hearing within twenty days, the defendant waived that right; and, on the motion of the state, the preliminary hearing was set for August 14, 1973. In the interim, Ziegenhagen's attorney withdrew because of a conflict of interest occasioned by his becoming assistant district attorney. On August 14, 1973, the defendant appeared with new counsel, who asked that the matter be adjourned, and the preliminary hearing was set for September 4, 1973. On September 4, the defendant's attorney, William Whitnall, appeared and stated that he had incorrectly advised his client of the date of the preliminary examination. In accordance with Attorney Whitnall's request, the hearing was continued and was held on September 14, 1973. On that date testimony was taken, probable cause was found, and Ziegenhagen was bound over for trial before the county court. He was arraigned on October 1, 1973, and he pleaded not guilty to the information. The clerk's minutes of that date show that he waived his right to a jury trial.

Judge WILLIAM F. JONES, before whom he was arraigned, stated that he would be unable to hear the case until January of 1974. With the consent of both the prosecution and the defense, the matter was transmitted to the clerk of court on October 1, 1973, for the purpose of having a trial at a date earlier than could be afforded in the court of Judge JONES. On October 3, 1973, the case was assigned to Judge HARVEY.

Nothing appears in the record in respect to this case until May 27, 1975, when the district attorney asked that the case be set for trial within ninety days. A subsequent portion of the record shows that the open file was discovered in the district attorney's office about this time and that discovery triggered the district attorney's request for the prompt trial of the case.

The district attorney's motion was sent to William Whitnall, who was the attorney of record for Ziegenhagen. He responded by stating that he had been the public defender since December of 1973 and that he was unable to represent Ziegenhagen because he was not indigent. At approximately the same time, Judge HARVEY returned the case to the clerk of court for reassignment on the ground that he was unable to handle the case because of court "congestion and matters waiting disposition." Reserve Circuit Judge MAX RASKIN was assigned to the case, and on July 2, 1975, the firm of Schoone, McManus & Hanson of Racine was substituted as attorneys of record for Ziegenhagen. The matter was set for trial on July 29, 1975.

On July 9, 1975, Ziegenhagen's attorney moved for dismissal on the ground that his client had been denied his constitutional right to speedy trial. The motion was heard before Judge RASKIN on July 21, 1975.

The chronology of the case as set forth herein was presented to the court. In the state's brief, it acknowledged that a two-year period was "undesirably long," that the bulk of the delay was "attributable to the government," and that "delay was occasioned by an error in the procedures" in the clerk of court's office. The district attorney's office denied that the delay was occasioned by any conduct of the prosecutor's office intended to prejudice the rights of the defendant but admitted that the delay had not been occasioned by any fault or lack of diligence of the defendant.

At the hearing the defendant testified that 15 to 17 neighbors had witnessed the alleged battery, but that now, when the case finally had been called for trial, he had been able to locate only three of them and those three could not remember the details of the incident.

Ziegenhagen testified that he had not been incarcerated and had not made a demand for a speedy trial. He

explained his failure to make such demand because Attorney Whitnall had told him in the summer of 1974 that the matter had been disposed of. He said that he relied on that statement.

He also said that he had given Whitnall a list of witnesses and believed that his attorney had interviewed them. His present attorney stated that he had secured Attorney Whitnall's files but found that the notes in respect to witnesses were cursory and contained no signed or recorded statements. The record also indicated that the complaining officer had complete notes and that all of the state's witnesses, police officers, were available for trial.

On the basis of the testimony at the hearing on the motion for speedy trial, Judge RASKIN found that the defendant's witnesses could not be located and that the memories of those who could be located were deficient. He found that the state's witnesses had complete notes from which they could refresh their memories, and he found that the defendant was exonerated from any duty to move for speedy trial because he believed that the matter had been disposed of. He specifically found that the revival of the case, when the defendant believed it to have been closed for over a period of a year, caused "the return of a cloud of anxiety and concern." Using the balancing test of *Barker v. Wingo* (1972), 407 U. S. 514, 92 Sup. Ct. 2182, 33 L. Ed. 2d 101, Judge RASKIN, because of irretrievable prejudice to the defendant, ordered the dismissal of the case on July 22, 1975. It is for the review of this order that the state has secured a writ of error.

Judge RASKIN made specific findings of fact, but a perusal of the record and of the briefs on appeal shows that the evidentiary facts upon which Judge RASKIN relied were undisputed. Under these circumstances only a question of law is presented, and we do not follow

the rule that the findings of a trial court must be sustained unless they are contrary to the great weight and clear preponderance of the evidence. The general conclusion of Judge RASKIN that Ziegenhagen was "prejudiced" by the lack of speedy trial is a question of law, which this court is obliged to resolve *de novo* under the admitted state of the facts. *State v. Rogers* (1975), 70 Wis. 2d 160, 164, 233 N. W. 2d 480.

In *State ex rel. Fredenberg v. Byrne* (1963), 20 Wis. 2d 504, 508, 123 N. W. 2d 305, this court held the constitution of the state of Wisconsin (art. I, sec. 7) and the Sixth Amendment of the United States Constitution provide that "the right to a speedy trial arises with the initial step of the criminal prosecution, *i.e.*, the complaint and warrant." We base our judgment in the instant case that Ziegenhagen was denied the right to speedy trial on the provisions of the constitutions of Wisconsin and of the United States.

While speedy trial problems have been presented to this court over the years, an ordered rationale for the determination of such cases was not utilized in Wisconsin courts until after the United States Supreme Court's decision in *Barker v. Wingo, supra*. The rationale of *Barker v. Wingo* was adopted in *Day v. State* (1973), 61 Wis. 2d 236, 212 N. W. 2d 489. In *Day*, this court followed the lead of the United States Supreme Court in *Barker* by using four factors to be considered in deciding whether the right to speedy trial has been denied: (1) length of the delay, (2) reason for the delay, (3) assertion of the right to speedy trial, and (4) prejudice to the defendant. We follow that analysis in determining whether in this case Judge RASKIN correctly concluded that, as a matter of law, Ziegenhagen was denied the right to speedy trial.

In the instant case the time between the initial issuance of the complaint and warrant on June 29, 1973,

and the date on which the defendant's motion to dismiss for lack of speedy trial was heard on July 21, 1975, was almost twenty-five months. The state concedes that such delay is "undesirably long"—"deplorably long." The state points out, however, that, although the defendant in *Barker* was not tried for over five years, other factors caused the United States Supreme Court not to dismiss for lack of speedy trial. The state is correct that mere lapse of time is not necessarily grounds for dismissal for want of speedy trial. As the United States Supreme Court stated in *Barker*, page 533:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process."

Nevertheless, this court has adopted the policy that we will not inquire into the contention that there has been a lack of speedy trial where there is no evidence of excessive delay. As *Barker* stated, at page 530, there is no necessity for inquiry into the other factors unless there is a delay which is presumptively prejudicial. We have declined to implement a specific period of time as a standard upon which to determine whether or not the right to a speedy trial has been denied. *Day v. State, supra; State v. Kwitek* (1972), 53 Wis. 2d 563, 193 N. W. 2d 682. What is a presumptively prejudicial delay has been approached on an *ad hoc* basis by this court in dealing with the question of the deprivation of the constitutional right of speedy trial.[1]

[1] The statutory right to speedy trial, the denial of which results in a release of the defendant while awaiting trial but does not dismiss the complaint, is set forth in sec. 971.10, Stats.

On an *ad hoc* basis this court has found, in *Hadley v. State* (1975), 66 Wis. 2d 350, 363, 225 N. W. 2d 461, that an eighteen-month delay was "so excessive that it leads prima facie to the inquiry of whether there was a denial of speedy trial." In *Watson v. State* (1974), 64 Wis. 2d 264, 219 N. W. 398, a seventeen-month delay was held to be presumptively prejudicial. In *State v. Shears* (1975), 68 Wis. 2d 217, 229 N. W. 2d 103, where there was a delay of a little over a year, and in *Day v. State, supra,* where there was a delay of seven months, the periods were held not long enough to be presumptively prejudicial but were nevertheless sufficient to trigger the remaining balancing factors set forth in *Barker* to determine whether, in fact, there was a denial of the right to speedy trial.

In the instant case, where the total elapsed time was twenty-five months, and in which there was a period of at least twenty months total inactivity between the assignment of the case to Judge HARVEY and the district attorney's demand for speedy trial, the delay was presumptively prejudicial.

Proceeding then to the second of the *Barker* factors, it is undisputed that the delay is chargeable completely to the state. The district attorney at oral argument in this court freely acknowledged, as he did before the trial court, that the defendant had engaged in no delaying tactics and that the delay was not to be attributed to Ziegenhagen. The state, rather, argues on this appeal that the delay was chargeable solely to a clerical error in the office of the clerk of court and that the prosecutorial branch of the criminal justice system should not be penalized for the clerk's error. This argument misses the mark, for, as is made clear in *Barker,* page 531, and *Hadley, supra,* page 363, the government as an institution is charged with the duty of assuring a defendant a speedy trial. It is irrelevant whether the de-

lay occurred in the clerk's office, the prosecutor's office, or the judiciary. The delay in the circumstances of this case is to be charged against the state of Wisconsin.

The circumstances under which the delay occurred are nevertheless important in assessing the weight to be assigned to the government's delay. As the United States Supreme Court said in *Barker*, page 531:

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."

In the instant case there is no evidence to show that the prosecutor's office delayed trial for the purpose of hampering Ziegenhagen's defense. Our review of the record leads to the conclusion that the delay, however, was occasioned by negligence in the office of the prosecutor as well as in the office of the clerk of court. The record shows that the tardy disposition of this case was first noticed by an assistant district attorney when making a check of the open files in that office. Had the district attorney not been negligent in the review of these files, this delay would not have occurred, irrespective of any concurrent negligence in the office of the clerk of court.

It appears, then, undisputed that the cause of the delay was the conduct of the government; and while delay occasioned by negligence is not to be weighed as heavily against the government as an intentional effort to hamper the defense, the responsibility must nevertheless rest with the state.

Additionally, it should be noted that this delay, although occasioned by no malevolence or lack of good faith in the administration of criminal justice, was not occasioned by a factor that was intrinsic to the case. The delay here cannot be excused as could the delay in *Barker*, where a necessary witness was ill and unable to attend trial. Here the government's reasons for delay were extrinsic to the case and, hence, must be chargeable *in toto* to the state.

The record here shows that the defendant did not make a demand for speedy trial at any time. His first assertion of that right appears in his motion of July 9, 1975, demanding a dismissal for the failure to provide him a speedy trial. The state is correct in its assertion that ordinarily the failure to make a demand for a speedy trial may be weighed against the defendant. On the other hand, this court has pointed out in *State v. Shears, supra,* that a defendant has no duty to bring himself to trial—that the duty is on the state.

*Barker v. Wingo* makes clear that a defendant's demand for a speedy trial is probative of the fact that the delay was not occasioned by the defendant and that the defendant was subjectively of the opinion that he was being prejudiced by the lack of speedy trial. The *Barker* rule, although giving great affirmative weight to the defendant's assertion of the right to speedy trial, did not foreclose situations in which the failure to make a demand for speedy trial was not to be weighed against the defendant. As the United States Supreme Court stated in *Barker*, page 536:

"We do not hold that there may never be a situation in which an indictment may be dismissed on speedy trial grounds where the defendant has failed to object to continuances. There may be a situation in which the defendant was represented by incompetent counsel, was severely prejudiced, or even cases in which the continu-

ances were granted *ex parte*. But barring extraordinary circumstances, we would be reluctant indeed to rule that a defendant was denied this constitutional right on a record that strongly indicates, as does this one, that the defendant did not want a speedy trial."

In *Hadley v. State, supra*, page 361, this court stated that the failure to make a demand was an important factor to be charged against the defendant where he was "consciously seeking to avoid the day of reckoning." It is conceded by the state in this case that such circumstances were not present here.

The trial judge, on the basis of the facts, found that the defendant believed, on the basis of a statement allegedly made to him by Attorney Whitnall, that the matter was taken care of and he could forget about it.

While the basic fact that Whitnall told Ziegenhagen that the case was taken care of and Ziegenhagen could forget it was undisputed, more than one inference reasonably could be drawn from that statement. Judge RASKIN concluded that Whitnall's statement gave rise to the inference that Ziegenhagen believed that the case had been terminated. Whether that was the only inference that could reasonably be drawn under the facts is a close question. The inference could also be drawn that, although there was no need for immediate concern in respect to the pendency of the case, it was merely dormant and not terminated. If such inference were the proper one, Ziegenhagen would have been alerted to his responsibility to move for speedy trial. The trial judge, however, found, after an examination of Ziegenhagen, that the facts surrounding the conversation with Whitnall made Ziegenhagen's understanding reasonable. On the basis of the facts, we accept as reasonable the inference drawn by Judge RASKIN.

Moreover, there is evidence that, from at least December 1973 to July 1975, the defendant was unrepresented,

although the record indicates that the attorney did not inform the prosecutor that, by reason of his appointment as public defender, he was no longer representing Ziegenhagen. At oral argument before this court, the district attorney pointed out that the period during which Ziegenhagen was unrepresented could arguably be charged to the incompetency of counsel because of his failure to inform the prosecution and the defendant on the record that he was no longer representing him.

We find no evidence of incompetency of counsel, but assuming *arguendo* that the failure of counsel to give more appropriate notice to his client and the prosecutor was incompetency, *Barker v. Wingo* above specifically exonerates the defendant from responsibility. Hence, under the facts of this case, where it is clear that no demand for speedy trial was ever made by the defendant or his counsel and where the judge expressly found that the defendant believed that the case had been dismissed, the failure to demand a speedy trial is not to be charged against him.

The fourth factor of *Barker* determining whether there has been a denial of the constitutional right to speedy trial is prejudice to the defendant. Judge RASKIN in his memorandum opinion concluded "that the defendant's defense has been irretrievably impaired" by the two-year delay. The memorandum trial brief of the state, which is included in the record, acknowledges that "Mr. Ziegenhagen was prejudiced by having to live with the anxiety of an impending trial during the trial delay." The state nevertheless argued that the lapse of time would impair the prosecution's ability to proceed as much as it would the defendant's ability to defend himself and, therefore, should be considered a neutral factor.

Justice BRENNAN in a concurring opinion in *Dickey v. Florida* (1970), 398 U. S. 30, 42, 90 Sup. Ct. 1564, 26 L. Ed. 2d 26, wrote:

"The passage of time by itself, moreover, may dangerously reduce his capacity to counter the prosecution's charges. Witnesses and physical evidence may be lost; the defendant may be unable to obtain witnesses and physical evidence yet available. His own memory and the memories of his witnesses may fade."

In *Barker v. Wingo,* page 530, footnote 30, Justice POWELL, writing for a unanimous court, acknowledged that *Barker* is based on the same rationale as Justice BRENNAN'S concurrence in *Dickey.* In *Barker* the court stated that prejudice should be identified in the light of at least three interests that the speedy-trial provisions of the constitution were designed to protect: Prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of a defense.

Under the facts of this case, the first interest is in no way implicated, for Ziegenhagen, who was considered to be a reputable citizen, was not incarcerated and was from the beginning released on his own recognizance. Although the trial judge found, and the state conceded, that the delay had occasioned some anxiety and concern on the part of the defendant, such anxiety was minimal. The record shows that for over a year, from the summer of 1974 to the summer of 1975, the defendant was not concerned because he assumed that his case had been taken care of.

More important is the fact that the delay had impaired the ability of Ziegenhagen to defend himself. It is undisputed in the record that only three of seventeen listed witnesses for the defendant were available and their memories of the incident were impaired. It may well be that some of those of the fourteen missing witnesses could have been located prior to trial, and it could also be argued that their evidence would merely be cumulative to that of the witnesses who were available; but as stated

above, the state did not contend that the defendant's ability to defend himself would not be impaired by the passage of time, but rather contended that the delay would impair the prosecution and the defense equally. The record is to the contrary. The evidence adduced at the hearing before Judge RASKIN showed that all of the eight police officer witnesses were presently available and that the police department records contained extensive notes with which they could refresh their memories. The state countered this argument by the assertion that, if it were not for incompetent counsel, statements of all defense witnesses would have been reduced to writing shortly after the incident and the fact that the defense had not made an adequate record of the case initially should not be charged to the state.

While there is no doubt that Ziegenhagen may not have been afforded optimum representation by his counsel, more adequate statements taken from witnesses would not in ordinary circumstances, even where counsel was most zealous, make possible the admission of out-of-court statements of witnesses who could not now be produced.

■■ We conclude that, in light of the record, Judge RASKIN correctly held that the delay had prejudiced the defendant and irretrievably impaired his ability to defend himself. Moreover, as we pointed out in *Hadley v. State, Barker v. Wingo* does not require that the defendant claiming the deprivation of speedy trial affirmatively show prejudice. As stated in *Hadley v. State,* that question was set to rest in *Moore v. Arizona* (1973), 414 U. S. 25, 26, 94 Sup. Ct. 188, 38 L. Ed. 2d 183, when it stated:

"The state court was in fundamental error in its reading of *Barker v. Wingo* and in the standard applied in judging petitioner's speedy trial claim. *Barker v. Wingo* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial."

The statement in *Moore v. Arizona* is an amplification of the statement in *Barker v. Wingo* at page 533:

"We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial."

We conclude, therefore, that the delay here incurred was presumptively prejudicial, that the reason for the delay, as conceded by the state, was wholly chargeable to the state, and that under the circumstances the failure of the defendant to assert his right to speedy trial was not evidence that he either desired the delay or tolerated it. In addition, there was substantial evidence that the ability to defend himself was in fact impaired by the passage of time. The trial judge correctly found that Ziegenhagen was denied his constitutional right to speedy trial.

We conclude that the circumstances of the delay in this case resulted in the denial of the constitutional protections of speedy trial afforded by art. I, sec. 7, of the Wisconsin Constitution and the Sixth Amendment of the United States Constitution. As mandated by the United States Supreme Court in *Strunk v. United States* (1973), 412 U. S. 434, 440, 93 Sup. Ct. 2260, 37 L. Ed. 2d 56, given the determination that Ziegenhagen was denied a speedy trial, the complaint and information must be dismissed and the defendant discharged.

*By the Court.*—Order affirmed.