COURT OF APPEALS
DECISION
DATED AND FILED

February 6, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP1663-CR**

Cir. Ct. No. 2018CF1940

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

---

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

WALTER LAMONT FISHER,

DEFENDANT-APPELLANT.

---

APPEAL from a judgment and an order of the circuit court for Milwaukee County: DAVID A. FEISS, Judge. *Affirmed*.

Before White, C.J., Donald, P.J., and Geenen, J.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Walter Lamont Fisher appeals from a judgment of conviction for multiple offenses related to a shooting incident involving his former girlfriend and from an order of the circuit court denying Fisher's postconviction motion for a new trial or resentencing without a hearing. On appeal, he maintains that he is entitled to a new trial or resentencing, and he argues that his constitutional right to a speedy trial was violated, newly-discovered evidence in the form of a recantation from his former girlfriend entitles him to a new trial, and he is entitled to resentencing based on a new factor. Upon review, we affirm.

## BACKGROUND

¶2 On April 18, 2018, police responded to a call of shots fired at a residence at 804 West Somers Street in Milwaukee. When police arrived, Jana reported that Fisher, Jana's former boyfriend with whom she shared a child, came to her residence looking for Kyle, Jana's current boyfriend.[1] Jana stated that Fisher forced his way inside, pointed a gun at Jana's head, and threatened to kill her if she did not get out of the way. She further stated that after Fisher went inside, she heard shots being fired and she ran from the residence in her "bra and panties" to a neighbor's house to call the police. Kyle reported that Fisher showed up at the residence that night, he hid from Fisher in the bathroom, and he took cover in the bathtub when Fisher began firing shots through the bathroom door. Jana's seven-year-old son further provided that he was playing video games that night when he saw Fisher in the residence, and Fisher "just started shooting" at the bathroom door. Jana's son stated that he hid in the closet.

---

[1] We refer to the victims in this matter using pseudonyms. *See* WIS. STAT. RULE 809.19(1)(g) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

¶3    Fisher was charged with one count of attempted first-degree intentional homicide with use of a dangerous weapon, one count of first-degree recklessly endangering safety with use of a dangerous weapon with a domestic abuse assessment, one count of possession of a firearm by a felon, one count of felony bail jumping, and one count of misdemeanor bail jumping with a domestic abuse assessment for the events of that night.

¶4    Fisher's first trial in October 2018 resulted in a mistrial.  Fisher subsequently entered a demand for a speedy trial, and the case was rescheduled for a second trial in January 2019.

¶5    When the case was called for trial in January 2019, the State informed the trial court that it was having difficulties locating its witnesses and "would need to ask for the case to be passed for a matter of minutes."  The trial court passed the case, and when the case was recalled, the State indicated that the witnesses were available and it was now ready to proceed; however, the trial court rescheduled the trial for April 8, 2019.

¶6    In deciding whether to move forward with the trial or reschedule, the State noted that the first trial "took us five days" and the courthouse was going to be closed the next two days.  The State also added that Fisher was currently serving a sentence on other charges and he would be in custody on those charges whether the trial moved forward or was rescheduled.  The trial court similarly observed that the courthouse would be closed at the end of the week, and the closure of the courthouse would not provide enough time to finish the trial that week.  Thus, the trial court rescheduled the trial for April 8, 2019.

¶7     At the final pretrial for the April 8, 2019 trial date, the defense requested to have the trial rescheduled in order to accommodate a trial date for a different case.  The trial was again rescheduled for June 3, 2019.

¶8     When the case was called for trial on June 3, 2019, the State informed the trial court that it was unable to locate its witnesses and requested that the trial be adjourned.  The trial court granted "a final adjournment" saying, "[a]t this point given the very, very serious nature of these allegations and given the fact that Mr. Fisher is in custody on another matter I don't believe that an adjournment to a fall trial date would on its face not seriously violate his due process speedy disposition."

¶9     The case was rescheduled for trial on September 16, 2019. However, due to court congestion, the trial court was unavailable on September 16, 2019, and the case was rescheduled for trial on January 13, 2020.

¶10     Fisher moved to dismiss the charges based on a violation of his right to a speedy trial.  The trial court denied his motion and stated, "[W]e're coming up on it's going to be longer than a year since his last trial.  During this time period, there was one request by the defense to postpone the case.  There had been two requests by the State, and then the others are due to court congestion."  Thus, the trial court stated that Fisher's motion would be revisited if the case was unable to proceed at the next trial date.

¶11     Fisher ultimately stood trial in January 2020.  Jana, Kyle, and Jana's son, along with other witnesses presented by the State, testified to the events of that night.  The State further presented photographs of holes in the bathroom door and bathtub, and wood fragments and bullets in the bathroom.

¶12     Following the jury trial, Fisher was convicted of one count of first-degree recklessly endangering safety with use of a dangerous weapon, one count of possession of a firearm by a felon, one count of felony bail jumping, and one count of misdemeanor bail jumping with domestic abuse assessments.  Fisher was given a total sentence of nineteen years of imprisonment, bifurcated as twelve years of initial confinement and seven years of extended supervision.

¶13     Fisher filed a motion for postconviction relief in which he argued that he was entitled to a new trial or resentencing.  Specifically, he argued that his constitutional right to a speedy trial was violated, he had newly-discovered evidence in the form of an affidavit from Jana recanting her former statement that she saw Fisher with a firearm that night, and Jana's affidavit presents a new factor warranting resentencing.

¶14     The trial court denied Fisher's motion without a hearing.  The trial court rejected Fisher's argument that his constitutional right to a speedy trial was violated "for the reasons set forth on the record at the November 4, 2019 motion hearing."  The trial court further rejected Fisher's argument for a new trial based on newly-discovered evidence, and it called Jana's affidavit "plainly deficient" because it was based on "pure speculation" and uncorroborated.  The trial court also found that there was no probability of a different result because of the other evidence introduced at trial that Fisher had a firearm.  The trial court also rejected

Fisher's argument that a new factor entitled him to resentencing because what Jana remembered seeing was not relevant for sentencing purposes.[2]

¶15     Fisher now appeals.  Additional relevant facts will be set forth as necessary.

## DISCUSSION

¶16     On appeal, Fisher argues that the trial court erroneously denied his postconviction motion and that he is entitled to a new trial or resentencing.  He argues that his constitutional right to a speedy trial was violated, and he argues that an affidavit from Jana recanting her previous statement that she saw Fisher with a firearm that night is newly-discovered evidence entitling him to a new trial or a new factor that warrants resentencing.  We address each argument in turn.

### I.     Speedy Trial Violation

¶17     "Both the federal and state constitutions guarantee a criminal defendant the right to a prompt resolution of criminal charges made against him [or her] by the [S]tate."  *State v. Borhegyi*, 222 Wis. 2d 506, 509, 588 N.W.2d 89 (Ct. App. 1998).  We use the four-part test set forth in *Barker v. Wingo*, 407 U.S. 514 (1972), to determine whether a defendant's constitutional right to a speedy trial has been violated.  *State v. Urdahl*, 2005 WI App 191, ¶11, 286 Wis. 2d 476, 704 N.W.2d 324.  "We consider (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the

---

[2] In denying Fisher's claim, the trial court also added, "The defendant also seeks resentencing based on the affidavit of [Jana].  In pleading this claim, the defendant conflates the *McCallum* standard for a new trial based on newly discovered evidence with a new factor, which would be grounds for sentencing modification (not resentencing)."

defendant." *Id.* "[T]he test requires us to consider the totality of circumstances that exist in each specific case to determine if a speedy trial violation has occurred." *State v. Provost*, 2020 WI App 21, ¶26, 392 Wis. 2d 262, 944 N.W.2d 23.

¶18 Whether a defendant's constitutional right to a speedy trial has been violated is a question of law that this court reviews *de novo*. *Urdahl*, 286 Wis. 2d 476, ¶10.

¶19 Assuming that the relevant time period begins when Fisher entered a speedy trial demand on October 22, 2018, the State does not dispute that the length of the delay in this case exceeded one year and is therefore presumptively prejudicial. *See id.*, ¶12 ("Generally, a post-accusation delay approaching one year is considered to be presumptively prejudicial."). The State also does not dispute that Fisher asserted his right to a speedy trial in this case shortly after his first trial on October 22, 2018. Thus, we focus our analysis on the second and fourth factors: the reason for the delay and prejudice to Fisher.

¶20 Under the second factor, Fisher attributes the delays in his trial to the State and argues that "this case is government negligence at minimum, if not intentional delay." However, contrary to Fisher's assertion, the State was not responsible for each delay in his trial, and those delays that are attributable to the State are not intentional delays that require us to assign heavy weight to them.

¶21 Beginning with the first time Fisher's retrial was scheduled in January 2019, the State requested that the case be passed for "a matter of minutes" to allow the State to locate its witnesses. By the time the case was recalled, the State had located its witnesses and was prepared to proceed. However, after a discussion with the trial court about how long the trial would last and the impact

that a courthouse closure would have on the ability to finish the trial, the trial was rescheduled for April 2019. This is hardly an intentional delay on the State's part, and therefore, we do not assign heavy weight against the State for this delay. *See id.*, ¶26.

¶22     Turning to the second time that Fisher's trial was rescheduled in April 2019, the record is clear that the defense was responsible for requesting the adjournment because the defense had a scheduling conflict with the April 2019 trial date. "[I]f the delay is caused by the defendant, it is not counted." *Id.* Thus, we do not count this delay, and we reject Fisher's characterization that this delay is somehow attributable to the State.

¶23     At the next scheduled trial date in June 2019, the State made its first request to have the trial rescheduled because it was unable to locate its witnesses. However, despite Fisher's characterization that the State failed to prepare for trial, we consider that this delay was not due to a lack of effort put forth by the State to be prepared for trial. In fact, as the State described on the record, Kyle was in custody on another matter but was not produced, despite a request by the State to have him produced. The State was also unable to locate Jana and her son because "the house that she'd given us as her last address is vacant."

¶24     The record clearly indicates that the State did not request the adjournment for an intentional lack of preparation on its part. Thus, while we attribute this delay to the State, we reject Fisher's argument to assign heavy weight against the State for this delay as an intentional and deliberate attempt to delay his trial. *See id.* ("A deliberate attempt by the government to delay the trial in order to hamper the defense is weighted heavily against the State[.]"); *see also State v.*

*Ziegenhagen*, 73 Wis. 2d 656, 668, 245 N.W.2d 656 (1976) (noting that unavailability of a necessary witness is excusable).

¶25    Fisher's case was again scheduled for trial in September 2019; however, the trial court was unable to hold the trial at that time due to court congestion. "[D]elays caused by the government's negligence or overcrowded courts, though still counted, are weighted less heavily." *Urdahl*, 286 Wis. 2d 476, ¶26. Consequently, this delay in Fisher's trial, while attributable to the State, is not heavily weighted against the State.

¶26    Next, we consider any prejudice to Fisher under the fourth factor. "Courts consider the element of prejudice with reference to the three interests that the right to a speedy trial protects: prevention of oppressive pretrial incarceration, prevention of anxiety and concern by the accused, and prevention of impairment of defense."[3] *Id.*, ¶34.

¶27    In this case, Fisher asserts that he was prejudiced because of the anxiety and concern that he suffered from having an unresolved criminal case. "However, without more than the bare fact of unresolved charges—which exists in every criminal case—we view the prejudice to the second interest as minimal." *Id.*, ¶35.

¶28    Fisher further asserts that his defense would be impaired due to "a witness that goes missing due to delay[.]" Initially, we note that Fisher has not

---

[3] Fisher does not make an argument based on oppressive pretrial incarceration. As stated repeatedly throughout these proceedings, Fisher was in custody on other charges, and his incarceration during the pendency of these proceedings was not the result of a delay in his trial on the charges underlying this case. We, therefore, do not discuss this interest in our analysis. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992).

actually provided that his defense was impaired because any of the witnesses went missing during the delay that occurred from the first trial in October 2018 to the retrial in January 2020. *See Provost*, 392 Wis. 2d 262, ¶47 (addressing an argument that the defense was impaired due to the death of a witness during the delay). Consequently, we consider any impairment asserted by Fisher due to missing witnesses to be highly speculative and largely theoretical. Moreover, we note that this case was a retrial, and the original trial from October 2018 preserved any witness testimony that would otherwise have been lost with the passage of time. Thus, we consider that any prejudice Fisher suffered as a result of an impaired defense is, at best, minimal.

¶29 Ultimately, balancing and considering the factors in total, we conclude that Fisher's constitutional right to a speedy trial was not violated. *See id.*, ¶26. While the State does not dispute that the delay is presumptively prejudicial and Fisher asserted his right to a speedy trial, Fisher has shown only minimal prejudice that does not outweigh the delays in his trial that were due in large part to the court's calendar and the unavailability of witnesses, which is not heavily weighted against the State.

## II. Newly-Discovered Evidence

¶30 A defendant must prove four criteria to satisfy the test for newly-discovered evidence: "(1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking the evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative." *State v. Plude*, 2008 WI 58, ¶32, 310 Wis. 2d 28, 750 N.W.2d 42 (citation omitted).

¶31 "If the defendant is able to prove all four of these criteria, then it must be determined whether a reasonable probability exists that had the jury heard

the newly-discovered evidence, it would have had a reasonable doubt as to the defendant's guilt." *Id.* "A reasonable probability of a different outcome exists if 'there is a reasonable probability that a jury, looking at both the [old evidence] and the [new evidence], would have a reasonable doubt as to the defendant's guilt." *State v. Love*, 2005 WI 116, ¶44, 284 Wis. 2d 111, 700 N.W.2d 62 (alteration in original; citation omitted).

¶32    When a defendant claims newly-discovered evidence based upon a recantation, the claim "also requires corroboration of the recantation with additional newly discovered evidence." *State v. McAlister*, 2018 WI 34, ¶33, 380 Wis. 2d 684, 911 N.W.2d 77. Corroboration requires that "(1) there is a feasible motive for the initial false statement; and, (2) there are circumstantial guarantees of the trustworthiness of the recantation." *Id.* (citation omitted).

¶33    "The decision to grant or deny a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion," and "[w]e review the circuit court's determination for an erroneous exercise of discretion." *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60.

¶34    Additionally, we review *de novo* "whether the motion on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433. However, "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief," we review the trial court's decision for an erroneous exercise of discretion. *Id.*

¶35    In this case, Fisher claims that an affidavit from Jana recanting her previous statements indicating that she saw Fisher with a firearm is newly-

discovered evidence that calls into question his conviction because his conviction requires a finding that he had a firearm that night. In the affidavit, Jana states, "I never saw a gun in Walter Lamont Fisher's hands[.]" She further states, "That because I heard what sounded like two different gun shots, because Walter Lamont Fisher was mad, and because he pointed towards me angrily, I assumed that Walter Lamont Fisher had a gun."

¶36 In short, Fisher's claim of newly-discovered evidence fails, and the trial court did not erroneously deny Fisher's postconviction motion without a hearing. Overall, we conclude that Fisher has failed to provide other newly-discovered evidence to corroborate Jana's affidavit recanting her prior statement to police and testimony in which Jana stated that she saw Fisher holding a firearm that night. He also fails to provide any feasible motive why Jana initially told police and testified in two trials that she saw Fisher with a firearm that night if she in fact did not.[4]

¶37 Fisher contends that Jana "felt bad about her previously incorrect statements" and "wishes to recant her incorrect statements to police and at trial to clarify that she never saw a gun in Fisher's hands[.]" He further provides that Jana "has multiple motives for the false statement, but the main one was fear of perjury." He adds that "[a]nger was certainly a factor" and "there is still romance and passion involved." As to circumstantial guarantees of trustworthiness, Fisher

---

[4] However, we also note that the trial court found that Jana's affidavit does not call into question whether Fisher possessed a firearm that night because Jana still states that she assumed Fisher possessed a firearm based on all the information available to her that night, and Jana's new found assumption does not eviscerate the abundance of other evidence introduced at trial indicating that Fisher did indeed possess a firearm that night. We agree. Thus, there is also no reasonable probability of a different result.

asserts that Jana "was building towards this" because each retelling of the events of that night became "more and more favorable to Fisher." We reject Fisher's argument that this satisfies the corroboration requirement.

¶38 A full review of Jana's affidavit shows that it is entirely silent as to a reason for her previous statement to police and testimony in two trials that she saw Fisher with a firearm. Instead, Fisher's explanation appears to be purely speculative and completely of his own making. At no point in her affidavit does Jana state that she feels bad for making her previous statements, that she "has multiple motives" for making false statements or for providing a recantation affidavit now, that she feared the consequences of committing perjury, or that anger, romance, or passion motivated her previous statements that she saw Fisher with a firearm. Therefore, we conclude that Jana's affidavit lacks a feasible motive for the initial false statement as required for the corroboration requirement of a recantation. *See McAlister*, 380 Wis. 2d 684, ¶33.

¶39 Additionally, Fisher's interpretation of the differences in Jana's statement and trial testimony—that Jana was building towards a recantation—fails to establish that Jana's current statement in her affidavit is in any way more credible than any of her previous statements such that it has circumstantial guarantees of trustworthiness. *See State v. McCallum*, 208 Wis. 2d 463, 477-78, 561 N.W.2d 707 (1997) (identifying circumstantial guarantees of trustworthiness for a recantation).

¶40 Overall, we conclude that the trial court did not erroneously deny Fisher's claim of newly-discovered evidence because Fisher failed to satisfy the corroboration requirement for Jana's affidavit.

13

### III.    Sentence Modification Based on a New Factor

¶41    A defendant may seek a modification of his or her sentence "upon the defendant's showing of a 'new factor.'"[5]  *State v. Harbor*, 2011 WI 28, ¶35, 333 Wis. 2d 53, 797 N.W.2d 828 (citation omitted).  To do so, the defendant first "has the burden to demonstrate by clear and convincing evidence the existence of a new factor."  *Id.*, ¶36.  Then, "if a new factor is present, the circuit court determines whether that new factor justifies modification of the sentence."  *Id.*, ¶37.  "Thus, to prevail, the defendant must demonstrate both the existence of a new factor and that the new factor justifies modification of the sentence."  *Id.*, ¶38.

¶42    The definition of a new factor is well-settled as "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because … it was unknowingly overlooked by all of the parties."[6]  *Rosado v. State*, 70 Wis. 2d 280, 288, 234 N.W.2d 69 (1975).

¶43    "Whether a fact or set of facts presented by the defendant constitutes a 'new factor' is a question of law" that we review independently.  *Harbor*, 333

---

[5] Fisher argues that he is entitled to resentencing based on a new factor.  However, a defendant is entitled to sentence modification, not resentencing, upon a showing of a new factor.  *See State v. Harbor*, 2011 WI 28, ¶33, 333 Wis. 2d 53, 797 N.W.2d 828.  Thus, we construe Fisher's argument as one for sentence modification as opposed to one for resentencing.

[6] We note that Fisher's argument is in large part based on *State v. Michels*, 150 Wis. 2d 94, 441 N.W.2d 278 (Ct. App. 1989), when he argues that Jana's affidavit is "new information" that "clearly frustrates and strikes at the purpose of his sentence."  However, our supreme court stated over a decade ago, "We withdraw any language from *Michels* and the cases following *Michels* that suggests an additional requirement that an alleged new factor must also frustrate the purpose of the original sentence."  *Harbor*, 333 Wis. 2d 53, ¶52.  We therefore reject Fisher's reliance on *Michels* and his argument that Jana's affidavit frustrates the purpose of his sentence.

Wis. 2d 53, ¶33. However, we review "[t]he determination of whether that new factor justifies sentence modification" for an erroneous exercise of discretion. *Id.*

¶44 Fisher argues that Jana's affidavit recanting her prior statement to the police and her prior testimony in which she stated that she saw Fisher with a firearm is a new factor that justifies sentence modification. Fisher maintains that whether he "had a gun or not makes or breaks the entire case" and Jana's affidavit shows "that the jury's verdict was improperly tainted" by Jana's inaccurate information. We disagree.

¶45 Jana's current statement in her affidavit that she did not see Fisher with a firearm that night was not highly relevant to the imposition of Fisher's sentence, and therefore, it does not constitute a new factor. *See **Rosado***, 70 Wis. 2d at 288. As the trial court observed, Jana's personal observation of a firearm that night played no role in the sentence that Fisher received. Rather, Fisher's sentence was based on the jury's guilty verdict and the totality of the evidence introduced at trial that Fisher possessed a firearm that night, including Kyle's testimony, the testimony of Jana's son, the bullets recovered from the scene, the holes in the bathroom door and the bathroom wall, and the wood fragments found in the bathroom. Indeed, Jana's affidavit does nothing to undermine any of the additional evidence that Fisher possessed a firearm that night, and there exists several other pieces of evidence that Fisher did possess a firearm that night, even if Jana now states that she did not see—and merely assumed—that Fisher had a firearm.

¶46 Therefore, we conclude that Fisher has failed to demonstrate that he is entitled to sentence modification based on a showing of a new factor.[7]

## CONCLUSION

¶47 In sum, we reject Fisher's claims that he is entitled to a new trial or resentencing based on a violation of his constitutional right to a speedy trial, newly-discovered evidence, or a new factor, and we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Further, we note that Fisher has failed to develop any argument under the second step—that a new factor justifies sentence modification—and his argument fails for this reason as well. *See Harbor*, 333 Wis. 2d 53, ¶38.